Curtis WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–85–269–CR.

Court of Appeals of Texas,
Corpus Christi.

June 16, 1988.

Carl Lewis, Corpus Christi, for appellant.

Grant Jones, Nueces County Courthouse, Corpus Christi, for appellee.

Before NYE, C.J. and BENAVIDES and DORSEY, JJ.

OPINION

NYE, Chief Justice.

On original submission, we affirmed appellant's conviction for sexual assault. *Williams v. State,* 712 S.W.2d 835 (Tex. App.—Corpus Christi 1986). In an unpublished opinion, the Court of Criminal Appeals remanded the cause to us so that we could abate the appeal for the trial court to determine whether the State had exercised its peremptory strikes in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Williams v. State,* 736 S.W.2d 906, 907 (Tex.App.—Corpus Christi 1987). The trial court conducted the *Batson* hearing, and the case is now back for our consideration.

Appellant was tried in April of 1985 and the *Batson* hearing was held in November of 1987. At the *Batson* hearing, the assistant district attorney who prosecuted the case explained why he used peremptory challenges to remove two of three black women on the venire panel.[1]

The two black women removed by the State's strikes were Bobbie Woodson and Florence Estrada.

With respect to Florence Estrada, the prosecutor testified that he thought she was hispanic, not black, at the time he made his decision to strike her. He further testified that, in his recollection, she was the ex-wife of a person named Jesse Villarreal, who had been convicted of capital murder and had received the death penalty. In addition, he had noticed that she had an overly animated demeanor in the courtroom, and felt that she was "an aberration, in comparison to the other individuals." The prosecutor further testified that Estrada's working in a nightclub, he believed, might affect her consideration of evidence

---

1. At the *Batson* hearing, the parties stipulated that one black ultimately served on the jury, that the victim of the sexual assault was black, and that appellant is black.

showing that the victim had been accused of being a prostitute. Estrada was also married to an unemployed person, and he "was concerned about that."

With respect to Bobbie Woodson, the prosecutor testified that Woodson had indicated that she had known the key defense witness, a severed co-defendant. He also indicated that Woodson had lived in the same neighborhood as the defendants and felt that this might cause a problem with pressure from the defendant, the defense witness, or their family. He further testified that during his examination of her, she spent most of the time with her arms folded to her chest. When being questioned by defense counsel, however, she was "a little bit more demonstrative," and "she maintained eye contact with him in a manner that I felt was suggestive of the other problems that I was—that I had with her, and I just—I didn't want to take a chance with her."

The prosecutor further testified that a sensational case involving a defendant named Woodson had been pending at the time and "that was a concern of mine, too."

The prosecutor further testified that the body language played a role in striking her, but that her knowing the defense witness and living in the same neighborhood as the defendants were other factors.

After the prosecutor testified, the *Batson* hearing was recessed so that the court reporter could locate and transcribe her notes of the actual voir dire examination which had occurred in April 1985. A week later, the transcription completed, the trial court reconvened the *Batson* hearing. At the beginning of the hearing, the trial court noted that some of the prosecutor's "recollection of the events was not correct."

The voir dire examination of Bobbie Woodson showed that she slightly knew the appellant because she had grown up with his sister. She testified that she had not seen the appellant in fifteen to seventeen years, and thought she could be fair. She further testified that she had not had any contact with any of the appellant's relatives.

The voir dire transcription also shows that prospective juror Estrada's husband had been convicted of possessing heroin. There was no indication that her husband had been convicted of capital murder and sentenced to death.

Appellant's counsel at the *Batson* hearing argued that the prosecutor had apparently overstated Woodson's relationship with the appellant and that nothing in the voir dire examination would justify a strike.

Following the *Batson* hearing, the trial court made written findings of fact and conclusions of law. The court found that "The State has presented clear and convincing evidence that there were neutral explanations for the use of its peremptory strikes on two black veniremen, Jurors # 3 and # 19, and that the strikes were not based on race alone." The court also found that "purposeful discrimination on the part of the State in its use of peremptory strikes has not been found."

When the case was redocketed in this Court, appellant was given the opportunity to rebrief the issue in light of *Batson* and more recent cases, however, no additional briefs were filed by either appellant or the State. Therefore, we will apply the appropriate standard of appellate review to this case without benefit of briefs.

In two recent cases, the Court of Criminal Appeals addressed the roles of the trial court and appellate court in *Batson* cases. *See Keeton v. State*, 749 S.W.2d 861 (Tex. Crim.App.1988) (not yet reported); *Tompkins v. State*, 727 S.W.2d 585 (Tex.Crim. App.1987) (not yet reported). The focus of the appellate court, as well as that of the trial judge, is whether purposeful discrimination was established. *Keeton*, p. 870. The appellate court reviews the evidence in the light most favorable to the trial court's ruling, and if the record supports the findings of the trial judge, they will not be disturbed.

■■■ Although the prosecutor's recollection of events was not totally accurate, he nonetheless offered plausible race-neutral explanations for his use of the peremptory strikes. Both *Keeton* and *Tompkins*

emphasize that the trial court is the fact-finder at a *Batson* hearing and that his findings are not to be disturbed if supported by the record. Applying this standard, we do not find that the State's use of peremptory strikes caused reversible error in this case.

The judgment of the trial court is AFFIRMED.