Anthony Craig LEWIS, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–88–00836–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 22, 1989.

Discretionary Review Refused
Oct. 18, 1989.

James Stafford, Houston, for appellant.

John B. Holmes, Jr., Linda A. West, and J. Robin Brown, Houston, for appellee.

Before MURPHY, SEARS and CANNON, JJ.

## OPINION

CANNON, Justice.

A jury rejected appellant's plea of not guilty to a murder charge and sentenced him to 45 years confinement. Appellant challenges his conviction on the grounds that the trial court erred in failing to discharge a jury panel from which all black veniremen were purposefully excluded, and in failing to grant appellant's motion for instructed verdict. We reverse and remand.

Appellant, a black man, was charged with the death of Wilbert Lavoid Perry, also a black man. There were seven black persons in the venire of forty, from which appellant's jury was selected. Each side was allowed ten peremptory challenges.

The state used seven of its strikes against the black veniremen, while no persons stricken by the defendant were black. Appellant's counsel timely objected to the composition of the jury before they were sworn on the basis that the state had purposefully discriminated against appellant by excluding all blacks from the jury. The trial court held a hearing pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and allowed the state to explain its reasons for its peremptory strikes. After hearing these reasons and rebuttal by defense counsel, the court found that the state gave racially neutral reasons for striking the black jurors and did not discriminate against appellant in the jury selection process. We must review the evidence in the light most favorable to the trial court's ruling, and that ruling will not be disturbed on appeal if the record supports the findings of the trial court. *Williams v. State*, 752 S.W.2d 729 (Tex.App.—Corpus Christi 1988, no pet.)

■ At the outset we should note that appellant established a prima facie showing of purposeful discrimination by the prosecution in her exercise of peremptory challenges. *Whitsey v. State* (Tex. May 10, 1989) (en banc). Therefore, the burden shifted to the State to rebut the presumption of discrimination, by providing racially neutral explanations for her peremptory strikes. *Batson* 106 S.Ct. at 1723. Following the *Whitsey* decision this court is required to review the rationale for each strike "in spite of the seemingly neutral rationale offered by the prosecutor." *Whitsey* slip op. at 8. This review may be accomplished by looking at several factors which tend to show the state's reasons are *not* racially neutral. These factors are:

1. The reason given for the peremptory challenge is not related to the facts of the case;
2. There was a lack of questioning to the challenged juror or a lack of meaningful questions;
3. Disparate treatment—persons with the same or similar characteristics as the challenged juror were not struck;

4. Disparate examination of members of the venire—questioning a challenged juror so as to evoke a certain response without asking the same question of other panel members; and
5. An explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically. *Keeton v. State*, 749 S.W.2d 861 (Tex.Crim. App.1988).

■ In its explanation to the court, the state argued that it used peremptory strikes against all veniremen with friends or relatives who were, or had recently been incarcerated. This category included black jurors numbers 7, 18 and 24, and also non black jurors number 1, 25, 28 and 32. The strikes against non black jurors 25 and 28 were not charged against the state because they were stricken by agreement between the state and the defense. The prosecutor stated that non black venireman number 5 was not stricken, although his stepson had been in prison in Colorado, because that was 18 years ago. As to these jurors, the state apparently met its burden to show a racially neutral reason for its strikes. *Batson* 106 S.Ct. at 1723. The state's reason showed that non black jurors were also stricken due to the same or similar characteristics as the black jurors.

■ However, the state's explanation for strikes against the other black jurors is more questionable. The prosecutor stated that she struck juror number 9 because he was one of three people that would have trouble sending someone young to prison. She also stated that on voir dire with defense counsel, juror number 9 appeared to give too much weight to the need for a prior criminal record before sentencing someone to prison. Juror number 9 was Andrew Arnic. On voir dire by the state, the following was established:

Q: Would the age of the defendant automatically cause you to hesitate to send somebody to TDC if they were very young?

A: No.

Q: Would it be more the facts?

A: The facts.

On voir dire with defense counsel the following occurred:

Q: Mr. Arnic? I think you made an interesting comment that I would like to question you a little bit about. I believe your response was that you may have a little difficulty with sending a young man to prison or sending someone to prison for a long time?

A: I don't mind sending a young person to prison, but I would like to know the facts. If I know the facts, I don't think that would be a problem.

Q: At the punishment stage let me tell you what the prosecution is entitled to do. They can bring you evidence, for example, that the person's been to prison four times for four murders and he may have said, if I get out, I'm going to kill again. Well, that would help you a lot. That tells you something about this individual. Would you agree with me there? And he may be a young man. So wouldn't you think in a situation like that, that that would aid you in determining whether to assess his punishment between five and 99 or life?

A: That would.

These dialogues show that the explanation of group bias assigned to Arnic did not in fact apply to him. Furthermore, non black jurors number 3, 8 and 15 were not stricken, even though they all expressed difficulty in sending a young person to prison. Juror number 3 said she would "possibly" have difficulty sending someone young to prison. Juror number 8 stated that it might be hard to sentence a young person to TDC, but she could do it. Juror number 15 said the age of the defendant "would make it harder" to sentence someone to prison. None of these were asked about their feelings regarding sentencing someone who did not have a prior criminal record. Furthermore, the prosecutor failed to strike three non black jurors who were questioned about a prior criminal record and indicated that it would have a bearing on the sentence given. Here there was disparate treatment of persons with similar characteristics and the disparate examination of members of the venire as well as an explanation of group bias which was inapplicable to the juror stricken. *Whitsey*, slip op. at 9; *Keeton* at 866. Thus, the prosecutor's reasons for striking Arnic were not racially neutral but contrived to avoid admitting discrimination. *Keeton*, at p. 868.

■ Juror number 14 was stricken because he stated that he could not send someone to TDC. The prosecutor explained that she intended to strike him for cause. The state was entitled to challenge juror number 14 because he would not consider the minimum punishment for murder, five years confinement. *Silguero v. State*, 654 S.W.2d 492 (Tex.App.—Corpus Christi 1983, pet. ref'd.).

■ As for Juror number 17, the prosecutor explained that he was a relative of Judge Routt and might be biased. She further explained that the juror's brother was once charged with burglary and later released, that the juror had a confrontational attitude and she felt that "he wasn't being honest with me when he said that he could be fair." Juror 17 however, was never asked about a possible bias from discussions with Judge Routt, or because of his brother's arrest. In fact, the prosecutor never asked the juror whether he could be fair. The entire dialogue between the prosecutor and juror number 17 was as follows:

Q: Mr. Routt? Are you related to our Judge Routt? What's your relationship?

A: My father's first cousin.

Q: Your's father's cousin. You or anyone you know victim, witness or accused in a criminal case?

A: Yes.

Q: Can you tell me about that?

A: My oldest brother was arrested for suspicion of burglary about ten years ago.

Q: Would it be difficult, Mr. Routt, for you to send somebody to TDC for a long time if the facts of the case warranted it?

A: No.

Again, the prosecutor's reasons do not appear to apply to the individual stricken.

As to juror number 17 there was a lack of meaningful questions to ascertain whether the prosecutor's suspicions were correct. *Whitsey* slip op. at p. 9. Intuitive judgment or suspicion by the prosecutor is insufficient to rebut the presumption of discrimination. *Keeton*, at p. 868. Furthermore, defense counsel argued the prosecutor's explanation of a bad attitude was a mere pretext because he observed no sign of a confrontational attitude by the juror.

 Juror number 27 was stricken because she had a nephew who had been killed while committing burglary. The prosecutor felt that "she was likely to have some feelings about youth and a person getting a second chance and this nephew of hers did not get a second chance. She further stated that she thought defense counsel's voir dire as to the need for a prior criminal record, would affect her ability to sentence. The prosecutor's suspicions are not supported by the record. She never questioned this juror about her feelings on the right to a second chance. Juror 27 was asked about her ability to sentence a young person, however, and she replied that she would have no difficulty doing so.

The prosecutor was correct that defense counsel questioned juror 27 concerning the range of punishment and the effect of a prior criminal record on sentencing. In response to these questions juror 27 indicated that in setting punishment she "would have to look at his past record because I was young once myself and the things that I did when I was young, I know better. I don't do these things anymore, so I would have to look at his record." It is interesting to note, however, that three other jurors were also questioned about their ability to set a lighter sentence for someone without a prior criminal record. Non black jurors 11, 16 and 29 all said they would consider the lack of a prior criminal record in sentencing. The state did not strike any of these jurors. As to the state's strike against juror number 27, there appears to be a lack of questioning which might support the prosecutor's suspicions and a disparate treatment of jurors emphasizing the need for a prior criminal

record. Both of these factors indicate the state's reasons for this strike were not racially neutral. *Whitsey*, slip op. at p. 9; *Keeton* at 868.

Therefore, as to jurors number 9, 17 and 27 the state's explanations are insufficient as a matter of law to rebut appellant's prima facie showing of racial discrimination. *Whitsey*, slip op. at p. 14. The trial court's finding that the State did not purposefully discriminate against appellant by eliminating these jurors is not supported by the record. Accordingly appellant's first point of error is sustained.

Judgment is reversed and remanded.