Timothy Earl CARROLL, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–97–501CR.

Court of Appeals of Texas, Beaumont.

Submitted June 10, 1999.

Decided Aug. 25, 1999.

Rehearing Overruled Sept. 23, 1999.

Tom Brown, Livingston, for appellant.

John S. Holleman, Dist. Atty., Alan K. Sumrall, Asst. Dist. Atty., Livingston, for state.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

DON BURGESS, Justice.

■ A jury found Timothy Earl Carroll guilty of aggravated robbery, found Carroll to be an habitual offender, and assessed as punishment forty years of confinement in the Texas Department of Criminal Justice, Institutional Division. The sole point of error raised on appeal contends, "The trial court abused its discretion in denying Appellant's challenge for cause of potential juror [W.F.] because [W.F.] stated that he could not consider the minimum authorized punishment."

■ A venireperson who is shown to be biased as a matter of law must be excused if he is challenged for cause. *Cordova v. State*, 733 S.W.2d 175, 182 (Tex. Crim.App.1987). It is left to the discretion of the trial court to initially determine whether such a bias exists and the court's decision will be reviewed in light of all of the answers given. *Green v. State*, 840 S.W.2d 394, 405 (Tex.Crim.App.1992); *see also Faulder v. State*, 745 S.W.2d 327, 339–40 (Tex.Crim.App.1987)( "If the prospective juror is not disqualified as a matter of law, and states that he can set aside his bias against the law that governs the punishment for a particular crime, then the trial court's refusal to sustain the defendant's challenge for cause will be reviewed in light of all of the answers the prospective juror gives.")

After the attorneys completed their voir dire presentations, the judge brought two venirepersons before the bench; the following transpired with the first venireperson:

THE COURT: At this time, Juror No. 31, [R.C.], would you approach, please.

. . . .

THE COURT: Hi, how are you doing, ma'am? For the record, your name is [R.C.]?

[VENIREPERSON]: Yes.

THE COURT: Ms. [C.] I believe, [Defense Counsel], do you have a question you wish to ask?

[DEFENSE COUNSEL]: Ms. [C.], earlier in response to a question you told me that you could not consider—if a person had a prior conviction, you could not consider—that there would not be a fact situation where you could consider the minimum. Would that be a fair statement?

. . . .

[VENIREPERSON]: Not before the courtroom.

[STATE'S ATTORNEY]: Most people haven't. Most people when they hear about aggravated robbery, they hear about horrible fact situations and a lot of them are but there are fact situations that are less than horrible. Let me just talk about a little fact situation and there are just all kinds of them just like this that could be an aggravated robbery.

You might have a situation where a lady had two—had a young child that was starving, hungry. She couldn't find food and walked up to a lady that was 70 years old and said, "Give me $5 or something."

[DEFENSE COUNSEL]: Your Honor, I object. That's asking the witness to commit to a particular fact situation.

[STATE'S ATTORNEY]: I think I should be allowed to go into fact situations.

THE COURT: I'm going to overrule your objection and allow him to continue at this time.

[STATE'S ATTORNEY]: Goes up to a lady that's 70 and says, "Give me $5; and if you don't do it, I'm going to slap you." That would be an aggravated robbery if you believe that. After she was found guilty, the facts might show that she went to the penitentiary, as [Defense Counsel] said, 20 years ago maybe for a joint of marijuana on two occasions.

Now, those are misdemeanor cases. In that fact situation, you would have a situation where the minimum is 25 years and maximum up to life or 99 years. So, aggravated robbery can be committed by many, many different types of people; many, many different reasons; and many different types of backgrounds. Some of them having gone to the penitentiary.

So, my question is going back: Do you still have the same kind what I call the knee-jerk reaction to say somebody is guilty of aggravated robbery no matter what the facts are? Someone has been to the penitentiary, no matter what the facts are and why they went, I would never ever consider a minimum of 25 years; or do you have an open mind and would want to hear the facts of that particular problem?

[VENIREPERSON]: I would like to hear the facts, but I think I would probably go the other way.

[STATE'S ATTORNEY]: Do you have a closed mind and say I never could, no matter what the facts are, no matter what type of robbery it was, no matter the reason the person went to the penitentiary?

[VENIREPERSON]: I can hear the facts. I guess I could.

[STATE'S ATTORNEY]: Well, the question, though, is not can you hear the facts but would you have—

[VENIREPERSON]: An open mind?

[STATE'S ATTORNEY]: Before you hear anything, do you have an open mind that you could consider a minimum just as you could consider life; or are you going to say I'm automatically not going to give a minimum.

[VENIREPERSON]: I think where I was coming from, knowing that the minimum sentencing won't be serving the minimum sentence, he can get off with the other one; and knowing what I know about the prison system that they sometimes can be let go just because of overcrowding, that's where I have a problem with it. Because if he has done the crime and he only does a few years for it, that's not paying for the crime.

[STATE'S ATTORNEY]: No, ma'am. What the facts are or no matter what he went to the penitentiary before for, you wouldn't consider that at all.

[VENIREPERSON]: Like I say, I could consider the facts; but the other thing would be in my mind.

[STATE'S ATTORNEY]: Well, could you—getting back to the same situation. Could you consider the minimum range; or do you have that door is already closed right now before you hear a thing?

[VENIREPERSON]: It's not closed. I have enough of an open door in my mind right here that I could consider it.

[STATE'S ATTORNEY]: Okay.

THE COURT: [Defense Counsel], do you have any further questions you want to ask of Ms. [C.]?

[DEFENSE COUNSEL]: No, sir.

THE COURT: All right. Ms. [C.], you stated to [Defense Counsel] that you could not consider the minimum range of punishment if it were shown.

[VENIREPERSON]: That's what I'm saying. That doubt would be in there.

THE COURT: What doubt?

[VENIREPERSON]: There would be a doubt in my mind, the doubt that I said about only serving so much time

when someone brought up the parole thing.

THE COURT: Could you consider the minimum range of punishment, 25 years, if you found someone guilty of aggravated robbery, find out they have two prior convictions?

[VENIREPERSON]: I'm not in that position. I don't know. My mind would probably listen to it. Just to who I am, I would listen to what the priors were.

THE COURT: Okay. Any further questions, [State's Attorney]?

[STATE'S ATTORNEY]: Are you saying that you can't say right now because it would depend on what the facts are of the aggravated robbery?

[VENIREPERSON]: Right.

[STATE'S ATTORNEY]: The facts of why they went to the penitentiary, what they went for?

[VENIREPERSON]: Right. But I would have—there is that doubt in there whether I would have a problem. I think what has got me now is the parole coming up and only serving so much of the term.

[STATE'S ATTORNEY]: The judge would—he would give you a charge that would tell, basically, what Mr.—what the law is, what [Defense Counsel] told you; and in this type of offense, they would have to serve day for day, at least 20 percent—excuse me, 50 percent of their sentence before they are eligible for parole. And then, it's up to the Board of Pardons and Paroles. And the judge will also say that you shouldn't consider that for any purposes. That's out of our control.

[VENIREPERSON]: Right.

[STATE'S ATTORNEY]: You are not saying you wouldn't be able to follow that law, are you?

[VENIREPERSON]: No.

[STATE'S ATTORNEY]: So, you are not saying that you wouldn't be able to consider in a proper—you will consider the minimum range of punishment in the fact situation, knowing that there are many different ways you can commit aggravated robbery and knowing there are many different reasons you can be sent to the penitentiary in the past for a felony case. Some of them you can't be sent. You can get up to six months in jail now. There are all kinds of fact situations. Some of them it would be appropriate to consider 25 or return 25?

[VENIREPERSON]: Right.

[STATE'S ATTORNEY]: Others it wouldn't be. Maybe the majority it isn't. But in some situations, all we can ask is would you have an open mind?

[VENIREPERSON]: Would I be open to 25? At this point, I can tell you, yes, I probably would.

THE COURT: [Defense Counsel], any further questions?

[DEFENSE COUNSEL]: No, sir.

THE COURT: Thank you. You can be seated.

. . . .

THE COURT: Do you still want to challenge this juror?

[DEFENSE COUNSEL]: Absolutely.

THE COURT: Okay. Any response?

[STATE'S ATTORNEY]: She said she could consider it, Judge. I think it makes her eligible.

THE COURT: I'm going to grant his challenge for cause.

To summarize, the venireperson first said she could not consider the minimum punishment, she was then rehabilitated by the prosecutor and said she could follow the law.

The following then transpired with the second venireperson:

THE COURT: Mr. [F.], would you approach, please, sir.

. . . .

THE COURT: Hi, how are you doing, sir?

[VENIREPERSON]: All right.

THE COURT: For the record, is it [W. F.]?

[VENIREPERSON]: [W. F.].

THE COURT: You are Juror No. 32. [Defense Counsel], do you have a question?

[DEFENSE COUNSEL]: Mr. [F.], you told me during the voir dire to the general panel that if someone was convicted and then they—he had two prior felony convictions that there was no—you could not consider the possibility of a minimum sentence of 25 years.

[VENIREPERSON]: Yes.

[DEFENSE COUNSEL]: Is there any fact situation you can conceive of where you would consider the 25 years if someone is convicted of aggravated robbery and if there is two priors?

[VENIREPERSON]: To be honest with you, I don't think so. I mean, if a guy is a two-time loser, he has been to the pen twice, that's evidence to me that he is not very rehabilitated and rehabilitation hasn't worked on the last two times. If he is convicted of this crime, that if he did commit the crime, he committed the crime knowing that he was a two-time loser, knowing he was going to be sent back to prison. I don't think 25 years will be long enough. I don't see it. Next time it could be my mother or your mother. I don't—no. I don't think 25 years is long enough.

THE COURT: [Defense Counsel], do you have any further questions?

[DEFENSE COUNSEL]: No.

[STATE'S ATTORNEY]: Yes, sir. Can I ask a few questions?

THE COURT: You sure can.

[STATE'S ATTORNEY]: Mr. [F.], let me—there are many different ways aggravated robbery can be committed. When I hear aggravated robbery, I think of a very serious offense; but aggravated robbery could be committed by an individual who had a small baby, for whatever reason fell on hard times, couldn't feed the baby, tried to feed it legally and just for whatever reason couldn't find a way to feed that 1–year–old baby.

[VENIREPERSON]: Trying to commit a burglary, thinking nobody was there, stumbled on somebody.

[STATE'S ATTORNEY]: Let me go up a little further. Walk up to a person 70 years of age and say, "Give me enough money to feed my baby or I'm going to slap you." They give him—pull out a $20 bill and I only want $10. I only need $10 and give the other $10 back. That would be an aggravated robbery under our law. Now, if that individual had been to the penitentiary before for felony offenses which include at one time one joint of marijuana was a felony offense back when [Defense Counsel] was talking about in 1960 or whatever.

[VENIREPERSON]: It's not necessarily a violent crime. It can be—

[STATE'S ATTORNEY]: No. Let's say that that individual had gone. He is the grandparent of that child. He had been in the '60s for possession of marijuana, for possession of one joint, got out, and for 15 or 20 years had never been in any trouble before, did all the things that you think that we as citizens ought to do.

[VENIREPERSON]: Right. Kept his nose clean.

[STATE'S ATTORNEY]: But committed that robbery because he couldn't feed his child or whatever.

[VENIREPERSON]: I could see where there could be some circumstances where—yeah. I could be sympathetic to one that couldn't feed their child.

[STATE'S ATTORNEY]: So, it's—there are all types of situations where you could commit an aggravated robbery that don't meet with the knee-jerk reaction of what aggravated robbery would be.

[VENIREPERSON]: If he went in there and pulled out a pistol.

[STATE'S ATTORNEY]: "Give me the money." Been to the penitentiary, without taking into consideration what they went to the penitentiary before, what they have done since they have been out of the penitentiary. So, with that background, would you—would you or—

[VENIREPERSON]: If the offenses were mild enough, I could see where I could—I could at least entertain the thought of 25 years.

[STATE'S ATTORNEY]: You could consider on the proper case returning a sentence of 25 years?

[VENIREPERSON]: Uh-huh. I mean, if the prior offenses had been nonviolent and, you know, like I said, just a joint of marijuana or something like that.

[STATE'S ATTORNEY]: Okay.

[VENIREPERSON]: No violence involved and I didn't feel like that—the main thing I'm going to look at is whether I feel like that the defendant is going to be a threat to me or my family.

[STATE'S ATTORNEY]: You are going to look at the particular facts of the robbery?

[VENIREPERSON]: Right.

[STATE'S ATTORNEY]: And the particular facts of whatever prior convictions he has had and not just automatically say I could never, no matter what the facts were, consider a sentence of 25 years; is that correct?

[VENIREPERSON]: That's correct.

THE COURT: [Defense Counsel], do you have any further questions?

[DEFENSE COUNSEL]: No, sir.

THE COURT: Thank you. You can be seated.

. . . .

THE COURT: [Defense Counsel], do you still wish to challenge that juror for cause?

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: The State?

[STATE'S ATTORNEY]: I oppose. I think he has shown that he can be.

THE COURT: I'm going to deny your challenge for cause as to Juror No. 32. That pushes us up to 36.

[STATE'S ATTORNEY]: Okay.

THE COURT: Is that correct, [Defense Counsel]?

[DEFENSE COUNSEL]: Yes, sir.

■■■ A brief synopsis of this testimony is the venireperson first said he could not consider the minimum punishment and he was then rehabilitated by the prosecutor. "Prospective jurors must be able to accept that, for the offense in question, the minimum legal punishment will be appropriate in some circumstances and the maximum legal punishment will be appropriate in some circumstances. In other words, prospective jurors must be able to keep an open mind with respect to punishment until they hear the evidence in the case being tried." *Johnson v. State,* 982 S.W.2d 403, 406 (Tex.Crim.App.1998). A venireperson who repeatedly asserts he will not follow the law, evidencing a strong conviction, will not be rehabilitated by "ritually reciting" he will follow the evidence. *Cumbo v. State,* 760 S.W.2d 251, 255–56 (Tex.Crim. App.1988).

We can not determine any meaningful difference between the two venirepersons. The judge was absolutely correct in allowing the challenge to the first and should have been consistent and allowed the second challenge.

Unfortunately, there appears to be an underlying reason the second venireperson was not excused. Although not explicit in the record, it appears venirepersons one through forty were seated on the first three rows and venirepersons forty-one through forty-six were seated on row four,[1]

---

1. Both jury lists have "4" beside those names.

the last row. Furthermore, again not explicit in the record, it appears the attorneys were advised not to individually question the venirepersons on row four.[2] By the time the challenge was made to W.F., the court had already excused four venirepersons for cause, thereby making venireperson forty the thirty-sixth potential juror. Therefore, had W.F. been excused, the individual questioning would have to be reopened, at least to venireperson forty-one, and, depending upon her answers, then to the others. This is reflected in the judge's comments just above and as follows:

[DEFENSE COUNSEL]: I would challenge No. 31, Ms. [C.] She stated that she could not consider the minimum.

[STATE'S ATTORNEY]: I would ask the Court to talk to her.

THE COURT: All right. Let's take this up. Any others?

[DEFENSE COUNSEL]: Yes, sir. [W. F.], No. 32, said the same thing.

[STATE'S ATTORNEY]: I ask that we question him up here, also, Your Honor.

THE COURT: Will that take us out of the....

[DEFENSE COUNSEL]: One, two, three, four. It doesn't take us to Mr. Battise.

THE COURT: Okay

[DEFENSE COUNSEL]: It may get to the....

Clearly, the court was concerned with going past venireperson forty (potential juror thirty-six).[3] This fact is the only discernable difference between Ms. C. and Mr. F.

**2.** There are numerous instances when these venirepersons would respond with raised hands and the attorneys would advise them they would not be reached.

**3.** Why is unclear and, without being overly critical; it was only 3:28 p.m. when the jury was seated.

Carroll's sole point of error is sustained. The judgment of the trial court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

RONALD L. WALKER, Chief Justice, dissenting.

I must respectfully dissent because I feel that the majority goes much too far afield in finding abuse of discretion by the trial court during jury selection. Initially, I must emphasize that the lone appellate issue presented to this Court by appellant reads, "The trial court abused its discretion in denying Appellant's challenge for cause of potential juror [W.F.] because Mr. [F] stated that he could not consider the minimum authorized punishment.". After recognizing the correct authority for reviewing decisions by the trial court with regard to challenges for cause based upon bias as to the facts or the law,[1] the majority then begins a comparison of the responses given by venireperson W.F. with those given by another venireperson, R.C. Unfortunately, this comparative analysis of responses is no part of the law the majority explicitly recognized as controlling on this issue. I liken the majority's approach to a "disparate treatment" analysis raised by parties complaining of Batson[2] error. See Pondexter v. State, 942 S.W.2d 577, 581–82 (Tex.Crim.App.1996), cert. denied, —— U.S.——, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997); Lewis v. State, 775 S.W.2d 13, 15–17 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd). I have been unable to locate any authority for applying a disparate treatment analysis to a non-Batson challenge for cause issue.

**1.** See Green v. State, 840 S.W.2d 394, 405 (Tex.Crim.App.1992), overruled on other grounds by Trevino v. State, 991 S.W.2d 849, 852 (Tex.Crim.App.1999); and Faulder v. State, 745 S.W.2d 327, 339–40 (Tex.Crim.App. 1987).

**2.** See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The departure from established precedent does not end there for the majority, however. Even if I were to accept a "comparative analysis"/"disparate treatment" approach to this appellate issue, the responses of W.F. and those of R.C. are clearly distinguishable in their respective abilities to be open to the full range of punishment for the offense *as defined by law. See Sadler v. State,* 977 S.W.2d 140, 143 (Tex.Crim.App.1998). R.C., who the trial court discharged for cause upon appellant's request, although rehabilitated, clearly had a problem with the possibility that if she did not assess a long enough prison term the appellant, "knowing what I know about the prison system that they sometimes can be let go just because of overcrowding, that's where I have a problem with it." This attitude was maintained virtually throughout the entirety of the questioning up at the bench.

On the other hand, the record reflects that W.F. initially had a problem with assessing a "minimum" 25 year sentence to "a two-time loser." With the State's first hypothetical question to W.F., it is clear that W.F. picked up the ball, so to speak, and admitted that under certain highly mitigating circumstances he (W.F.), "could see where I could— I could at least entertain the thought of 25 years." As the majority recognizes as the controlling law: "If the prospective juror is not disqualified as a matter of law, and states that he can set aside his bias against the law that governs the punishment for a particular crime, then the trial court's refusal to sustain the defendant's challenge for cause will be reviewed *in light of all of the answers* the prospective juror gives." (emphases mine) *Faulder,* 745 S.W.2d at 339–40. In the light of *all* of W.F.'s answers, the trial court did not abuse its discretion in refusing appellant's request to strike W.F. for cause. And although not before us as I read appellant's brief, I believe the trial court was correct in dismissing R.C. for cause in light of *all* of her answers.

Finally, I am troubled with the concluding portion of the majority's opinion dealing with an alleged "underlying reason the second venireperson was not excused." There is absolutely nothing in appellant's brief that even hints of an "underlying reason" for the trial court's refusal to excuse W.F. Nevertheless, without case, statutory, or constitutional authority, the majority delves into an area admittedly "not explicit in the record." As rationale for this excursion, the majority opines that because of an apparent time-saving, voir dire directive by the trial court, "had W.F. been excused, the individual questioning would have to be reopened[.]" The majority then concludes that "[t]his fact is the only discernable difference between [R.C.] and [W.F.]." This type of speculation seems, to me, purposeless since reviewing courts are to uphold correct rulings of the trial court even if the trial court's reasons were incorrect. *See Jones v. State,* 982 S.W.2d 386, 389 (Tex.Crim.App.1998), *cert. filed,* 67 USLW 3758 (March 8, 1999). In the instant case, the trial court made a correct ruling on appellant's challenge of W.F. for cause. Because the majority does not so hold, I must dissent.