**Lamark D. McGEE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–92–00287–CR.**

Court of Appeals of Texas,
Tyler.

Jan. 27, 1995.

Rehearing Overruled Nov. 1, 1995.

Howard Britain, Tyler, for appellant.

Ed Marty, Tyler, for appellee.

RAMEY, Chief Justice.

Lamark McGee ("McGee") appeals his conviction for engaging in organized criminal activity to distribute cocaine. After a plea of "not guilty," McGee was tried before a jury; he was found guilty of the offense charged, and a sentence of sixty-five years' imprisonment was assessed. McGee raises seven points of error in this appeal. We affirm the conviction.

McGee's first two points of error focus on the sufficiency of the evidence supporting the conviction. The first specifically complains of the court's failure to grant his

motion for an instructed verdict, the second, that the evidence was insufficient. The standard for reviewing the sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Cr.App.1989).

The evidence before the court was that McGee and a large number of other individuals were engaged in selling genuine and simulated controlled substances in what can be described as a loosely-organized cocaine "market." The various sellers met at a common location, used a common method of approaching passing cars, made cross-referrals, had "wholesalers" nearby, and would warn each other of the approach of police. McGee was filmed selling what was found to be a simulated controlled substance to an undercover officer.

To establish Appellant's guilt of organized criminal activity, it must be shown that he committed or conspired to commit an enumerated crime with the specific intent of participating in the criminal activity with a combination of persons and that he or she also possessed the intent to participate in the profits of the combination. Thus, in order to prove intent, the State must show that the accused knew of the criminal activity of the group. *Barber v. State*, 764 S.W.2d 232, 234 (Tex.Cr.App.1988); *Richardson v. State*, 763 S.W.2d 594, 596 (Tex.App.—Corpus Christi 1988, no pet.); *Nickerson v. State*, 686 S.W.2d 294, 297 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd). Since direct evidence is rarely available to prove a conspiracy hatched in secret, circumstantial evidence including the conspiratorial conduct must be relied on to prove the essential elements of the crime. *Farrington v. State*, 489 S.W.2d 607 (Tex.Cr.App.1972). Similar methods of operation together with joint activities and relationships support the finding of a single conspiracy. *United States v. Ochoa*, 609 F.2d 198 (5th Cir.1980); *Kennard v. State*, 649 S.W.2d 752, 764 (Tex.App.—Fort Worth 1983, pet. ref'd).

*Caddell v. State*, 865 S.W.2d 489, 491–92 (Tex.App.—Tyler 1993, no pet.).

■ Though McGee's sale to the undercover officer involved only fake cocaine, State's witness Dexter Cravens testified that he had observed McGee working the street with another dealer, Homer Neal, and that Neal was known to sell only real cocaine. From this testimony, the jury could have found that McGee was engaged in the cooperative selling of real cocaine, supplemented by the sale of simulated cocaine when the genuine article was not available.

■ Even if there was no proof that McGee was selling real cocaine, we think it permissible to infer that a group of people have agreed to work on a common project when the action of each is consistent with the realization of the common goal. McGee here was charged with participation in a combination to distribute cocaine. Evidence establishing all of the overt acts in the indictment pertaining to him was admitted at trial. These were that, on August 31, 1991, McGee approached vehicles with Dexter Cravens, with Dexter Spencer, and with Ronnie Caddell; that, on the same date, he sold a simulated controlled substance to Charles Bledsoe; and that, on September 13, 1991, he approached a vehicle with Homer Neal. All of these overt acts were videotaped and described while such tape was being played for the jury by Officer G.A. Hairford. This evidence was consistent with McGee's having actively participated in the combination; he was exploiting the "market" created and shared with others to hold himself out as a cocaine dealer and to profit from such circumstances. We have previously held, in related cases, that this local "market" was a product of organized criminal activity punishable under the prohibition against engaging in organized criminal activity. McGee took advantage of this market's existence in peddling his counterfeit wares, and we conclude that his evident exploitation of the opportunity presented by this environment provided a basis for a reasonable inference by the jury of his willing participation in the conspiracy creating and sustaining it. We therefore overrule McGee's first two points of error.

In his third point of error McGee asserts that the trial court erred in denying his objection to the State's allegation of an overt act for which he had been previously convicted, the delivery of a simulated controlled substance. There is no dispute that, prior to the trial of this cause, McGee pleaded guilty to the offense of delivery of a simulated controlled substance, and that the act for which he was then punished was identical to an overt act alleged contributing to his criminal responsibility for the offense of engaging in organized criminal activity. McGee asserts that the bringing of this second charge violates the constitutional and statutory prohibitions against putting one twice in jeopardy for the same crime. U.S. CONST., amend. V; TEX. CONST., art. I, § 14; TEX.CODE CRIM.PROC.ANN. art. 1.10. But engaging in organized criminal activity is to be treated like conspiracy for double jeopardy purposes, and the

> Double Jeopardy Clause does not bar successive prosecutions for a substantive offense and for conspiracy to commit that offense, even where the State proves the same conduct in both prosecutions, and even where the previously prosecuted conduct constitutes an overt act in the conspiracy prosecution.

*Lindley v. State,* 855 S.W.2d 729, 730 (Tex. App.—Tyler 1993, no pet.). *See also U.S. v. Felix,* 503 U.S. 378, 390–91, 112 S.Ct. 1377, 1385, 118 L.Ed.2d 25 (1992). McGee's third point of error is overruled.

McGee's fourth point of error asserts that it was error to use McGee's sale of a simulated controlled substance as an overt act in a conspiracy to sell cocaine, since the sale of a simulated controlled substance and the sale of a genuine controlled substance are distinct crimes. But this prosecution was for neither delivery of a simulated controlled substance, nor delivery of a genuine controlled substance. The State alleged that the sale of simulated cocaine was an overt act, a part of a larger conspiracy to sell cocaine; it is beyond dispute, from the nature of conspiracy, that each of the overt acts forming part of a conspiracy need not themselves be illegal, or directly punishable as violations of the substantive offense which was the object

of the conspiracy. *Childress v. State,* 807 S.W.2d 424, 431 (Tex.App.—Amarillo 1991, no pet.). It is therefore irrelevant to McGee's conviction that the elements of simulated and genuine delivery are distinct. Neither was used to prove the other, but one was used as an overt act in furtherance of a criminal combination to accomplish the other, with and through other persons. McGee's fourth point of error is overruled.

In his fifth point of error McGee argues that the trial court erred in the manner in which the jury panel was shuffled, in violation of TEX.CODE CRIM.PROC.ANN. art. 35.11, which provides that:

> The trial judge, on the demand of the defendant or his attorney, or of the State's counsel, shall cause a sufficient number of jurors from which a jury may be selected to try the case to be randomly selected from the members of the general panel drawn or assigned as jurors in the case. The clerk shall randomly select the jurors by a computer or other process of random selection and shall write or print the names, in the *order selected,* on the jury list from which the jury is to be selected to try the case. The clerk shall deliver a copy of the list to the State's counsel and to the defendant or his attorney.

The record reflects that the court granted a motion to shuffle the jury panel and ordered the clerk to draw the new order after a list had been prepared. The clerk testified that she combined the jury questionnaires in a box, drawing some slips out one at a time, but occasionally drawing out a handful, and sometimes reshuffling the handful she had drawn. As the clerk drew the questionnaires from the box and placed them in a pile, the trial judge would remove the questionnaires from the top of the pile and transfer the names to the list in that order. McGee asserts that this procedure violated the requirements for shuffling set out in *Fontenot v. State,* 379 S.W.2d 334, 336 (Tex. Cr.App.1964), and recently reaffirmed in *Jones v. State,* 833 S.W.2d 146 (Tex.Cr.App. 1992).

McGee is correct that the Court of Criminal Appeals has not required a showing of harm when Article 35.11 has been violated.

*Chappell v. State,* 850 S.W.2d 508, 512 (Tex. Cr.App.1993). But he has failed to establish that the procedure used here was itself in violation of Article 35.11 and those cases interpreting it. In *Jones,* the Court of Criminal Appeals held simply that only one shuffle was required under Article 35.11, absent some misconduct in the shuffle. *Jones,* 833 S.W.2d at 149. We do not construe *Jones* as defining a specific procedure required for the actual shuffle; it only emphasizes that a random selection of a jury is imperative. In the case before us, the method used was entirely random, substantially complying with the procedure set out in the statute. Point of error number five is overruled.

McGee's sixth point of error asserts that members of the jury panel were improperly excluded because of their race, in violation of the requirements of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). McGee is an African–American, and, because the State struck 13 of the 15 African–American venirepersons within the strike zone, the trial court found a prima facie case of racial discrimination at voir dire and ordered a hearing to determine if the State had race-neutral reasons for its strikes. The State then offered evidence, explaining its reasons for the exercise of each of its peremptory strikes. The trial court found the prosecutor's reasons for the strikes were race-neutral.

The standard of review of the trial court's decision is by the "clearly erroneous" standard set out in *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). *See Tennard v. State,* 802 S.W.2d 678, 680 (Tex.Cr.App.1990). Once a court determines that a defendant has made a prima facie *Batson* case, the burden shifts to the prosecutor to come forward with race-neutral reasons for its strikes. *Keeton v. State,* 749 S.W.2d 861, 865 (Tex.Cr.App.1988); *Silva v. State,* 800 S.W.2d 912, 915 (Tex. App.—San Antonio 1990, no pet.). The prosecutor's explanation must present a clear, specific, and legitimate reason for each challenge. *Brooks v. State,* 802 S.W.2d 692, 694 (Tex.Cr.App.1991); *Miller–El v. State,* 790 S.W.2d 351 (Tex.App.—Dallas 1990, pet. ref'd).

Appellate courts are to afford deference to the findings of the trial court. *See Robinson v. State,* 851 S.W.2d 216, 226 (Tex.Cr.App.1991). Evaluation of the prosecutor's state of mind, based on demeanor and credibility, lies peculiarly within a trial judge's province. *Newsome v. State,* 829 S.W.2d 260, 266 (Tex.App.—Dallas 1992, no pet.). The judge is in the best position to actually see the jurors as they are questioned by the attorneys during the voir dire examination. Therefore, the trial court's findings should be affirmed if its view of the evidence is plausible in light of the record reviewed in its entirety. *Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

In this case, the reasons the State gave for each strike were as follows:

(A) Number 17, Dossie Ford—because he lived on a street near a family named Mauldin. The State had recently prosecuted a notorious drug case against two defendants named Mauldin.

(B) Number 27, Karol Marie Talley—because of her age (under 25), her lack of employment, and because she was an unmarried mother.

(C) Number 28, Elaine Taylor—because she "had problems" with the immunity defense.

(D) Number 5, Billie Jean Ausborne—because she was related to several people in Troup who had recently been prosecuted by the Smith County District Attorney's Office.

(E) Number 49, David Campbell—because of his age (25), and because he did not participate in the voir dire examination.

(F) Number 60, David Prince—because he initially indicated confusion or disagreement with the immunity defense.

(G) Number 71, Martha Ruth Tilley—because the prosecutor thought that she was married to a person related to two people who had been prosecuted for crimes in Smith County.

(H) Number 75, Angela Jones—because of her age, and because she had three prior DWI convictions.

(I) Number 94, Ethel Bowie—because her son had a DWI charge pending against him, and she knew one of the defendants. Her employer of 32 years also had a cousin charged in a high profile murder case.

These race-neutral explanations for the State's peremptory challenges, in light of the entire record, do not lead us to believe that the trial court was clearly erroneous in finding no racial discrimination in the State's use of peremptory challenges. McGee's sixth point of error is overruled.

In his seventh point of error, McGee claims that the trial court committed reversible error in allowing testimony based on a lab report concerning drugs seized from co-defendants. Before trial, a motion for discovery was filed requesting the results of all scientific tests and all contraband seized as a result of the investigation, a request granted by the trial court. No lab tests, however, were produced by the State. When, during its case-in chief, the State began introducing through its witnesses evidence concerning lab tests, counsel for all defendants objected to what they considered a violation of the court's discovery order. After a hearing the trial court found that the reference to the lab report on the State's form put defense counsel on notice of the reports' existence, and that their failure to object to the ambiguity of this production essentially waived their right to make this objection. The contested report was therefore admitted after the defendants were given time to review it. We do not hold the court's ruling to be reversible error.

■ There is no general right of discovery of evidence in the possession of the State. *Brown v. State,* 657 S.W.2d 117, 119 (Tex.Cr. App.1983); *Quinones v. State,* 592 S.W.2d 933, 940 (Tex.Cr.App.1980). The State, however, is required to disclose evidence after the court has granted a motion for discovery. *See Granviel v. State,* 552 S.W.2d 107, 119 (Tex.Cr.App.1976).

■ Under TEXAS RULE OF CRIMINAL EVIDENCE 614(a), the party complaining of failure to comply with a discovery order must show the following key elements:

(1) Suppression of evidence by the prosecution after a request by the defense;

(2) the evidence's favorable character for the defense; and

(3) the materiality of the evidence.

TEX.R.CRIM.EVID. 614(a); *see Crane v. State,* 786 S.W.2d 338, 348 (Tex.Cr.App.1990). McGee has failed to meet this test because the evidence was not in any way favorable or material to his defense. In *Quinones, supra,* at 941, *citing, United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the court observed that any failure to furnish information must have deprived a defendant of a fair trial.

The mere possibility that an item might have helped the Appellant or might have affected the outcome of the trial does not necessarily establish 'materiality' in the constitutional sense.

*Crane,* 786 S.W.2d at 348–49, *citing, Butler v. State,* 736 S.W.2d 668, 671 (Tex.Cr.App.1987). Because there is no evidence of harm caused by the State's non-disclosure to McGee, we overrule his seventh point of error.

The judgment of the court below is **affirmed.**