In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-01-00705-CR

____________


FREDDIE CARL WALKER, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 262nd District Court

Harris County, Texas

Trial Court Cause No. 840,308





O P I N I O N


 A jury found appellant, Freddie Carl Walker, guilty of deadly conduct, and,
after appellant pled true to an enhancement paragraph alleging the offense of robbery,
the jury assessed punishment at a fine of $500. In five issues, appellant contends: 
(1) the trial court erred by not granting his Batson challenge; (2) the State acted in
bad faith by charging appellant with unlawful possession of a firearm by a felon and
failing to prove up all elements of that offense; (3) the trial court erred by giving the
jury a limiting instruction on self-defense; (4) the trial court erred by excluding
evidence of appellant's character trait of not being "quick tempered"; and (5) the trial
court erred by allowing the State to elicit comments from a police officer about
appellant's silence while in custody. We affirm.

Facts

 On March 27, 2000, appellant was working as a night clerk at a Diamond
Shamrock convenience store located at 11650 Hempstead Highway. A patron, Josh
Vinsonhaler, argued with appellant about the price of cigarettes. Vinsonhaler
testified that appellant was confrontational and said, "Can't you read the f***ing
receipt?" Vinsonhaler said, "F*** it," and threw cash on the counter. What occurred
next is disputed.

 Vinsonhaler testified that appellant chased him out of the store yelling, "You
want to try this sh** again?" Jennifer Harrington, Vinsonhaler's girlfriend, testified
that appellant backed Vinsonhaler out of the store yelling, "I cheated you? I cheated
you? Did I cheat you? I cheated you, you motherf***er."

 On the other hand, Joseph Calles, another patron in the store, testified it was
Vinsonhaler who cursed at appellant on his way out of the store. According to Calles,
appellant calmly went outside to talk to Vinsonhaler, at which point Vinsonhaler
lunged at appellant, and Vinsonhaler's friend, James Gentry, attacked appellant as
well.

 The testimony is consistent that Vinsonhaler and appellant began fighting. 
During the struggle, appellant produced a firearm that subsequently discharged twice. 
The second shot struck and killed Gentry. Vinsonhaler fled, and appellant returned
to the store to call the police. Appellant surrendered to the police when they arrived. 
 Appellant was indicted for the offenses of unlawful possession of a firearm and
murder. The jury found appellant not guilty of unlawful possession of a firearm and
guilty of the lesser-included offense of murder, deadly conduct.

Batson Challenge

 In his first issue, appellant contends the trial court erred by denying his Batson
challenge regarding the State's use of two peremptory challenges on prospective
jurors, numbers 15 and 23. Appellant contends the State did not give race-neutral
explanations for the strikes.

 The State may not exercise peremptory challenges in a racially discriminatory
manner. Batson v. Kentucky, 476 U.S. 79, 80, 106 S. Ct. 1712, 1714 (1986); Tex.
Code Crim. P. Ann. art. 35.261(a) (Vernon 1989). To assert a Batson challenge, the
defendant must establish a prima facie case of purposeful discrimination. Harris v.
State, 827 S.W.2d 949, 955 (Tex. Crim. App. 1992). Once the State gives non-discriminatory reasons for the strike, the burden shifts back to the defendant to refute
the explanation, or prove it is a pretext for discrimination. Salazar v. State, 795
S.W.2d 187, 192 (Tex. Crim. App. 1990); Tex. Code Crim. P. Ann. art. 35.261(a)
(Vernon 1989). The burden of persuasion remains with the defendant at all times. 
Ford v. State, 1 S.W.3d 691, 694 (Tex. Crim. App. 1999). The trial court's ruling
must not be disturbed unless it is clearly erroneous. Harris, 827 S.W.2d at 955.

 Defense counsel made the following Batson challenge during voir dire:

 Your Honor, at this time the defense makes a Batson challenge as to the
State's strikes of Juror No. 15 and Juror No. 23. Those are black males,
neither of whom answered questions by either the State or the defense. 


 The prosecutor responded:

 Judge, can I say for the record that I just realized, when we had the
Batson motion, that 23 was a black guy. I don't mind showing my sheet
to everybody here. On my jury sheet here, I always write on here "black
man" or "black female." On 23, I didn't write anything; I didn't realize
he was a black person; but at any rate, the reason we struck that person
is that we noticed throughout the voir dire, he say [sic] with his arms
folded, like he didn't care or wasn't paying attention to what was going
on. The person already also [sic] had a prior DWI conviction. We ran
criminal history [sic] on all the jurors' information, which we didn't
share with the strikes [sic]; so our strike of that juror has nothing to do
with the fact that he is a black person.


 The court then asked the State about venireperson number 15, and the
prosecutor responded:

 Let me find my notes. There was a question that I recall that Counselor
Katherine asked of him. I thought it had to do with deadly force or the
use of force. I don't remember; I think it was in that area. She asked
him a question about that. I did not like his answer at that time,
although at this time I don't remember specifically what that answer
was. That's basically it.


* * *


 We also noticed that he's been on his job - - he is 55 years old and has
only been on his job for a year and a half. We felt that might - - that was
a factor that we looked at in striking him. It had nothing to do with his
race, though.


 Our review of the record does not identify any responses to a deadly force
question from prospective juror number 15. Strikes based on employment status and
age, however, are permissible. Earhart v. State, 823 S.W.2d 607, 625 (Tex. Crim.
App. 1991) (unemployment, or instability on the job, are race-neutral reasons for
peremptory strikes); McGee v. State, 909 S.W.2d 516, 520-21 (Tex. App.--Tyler
1995, pet. ref'd) (age and unemployment are valid reasons for peremptory strikes). 
 Regarding prospective juror number 23, he was both non-responsive during
voir dire and had a prior DWI conviction. Inattentiveness is a legitimate reason for
striking a panel member. Vargas v. State, 838 S.W.2d 552, 555 (Tex. Crim. App.
1992). Moreover, a prior misdemeanor conviction constitutes a race-neutral reason
for a peremptory challenge. Keeton v. State, 749 S.W.2d 861, 870 (Tex. Crim. App.
1988). The State offered race-neutral explanations, and appellant did not rebut them. 
The trial court's ruling was not clearly erroneous. 

 We overrule appellant's first issue.

Bad Faith Prosecution

 In his second issue, appellant contends the prosecution did not prove all the
elements of the unlawful possession of a firearm charge and consequently acted in
bad faith. Appellant also contends the introduction of the underlying robbery offense
was prejudicial.

 To preserve error, a timely objection stating specific grounds must be made at
trial. See Tex. R. App. Proc. 33.1(a). Appellant made no objection to either a bad
faith prosecution for the firearm possession charge or to the introduction of the
underlying robbery offense at trial. Consequently, appellant has failed to preserve
this issue for review.

 We overrule appellant's second issue.

Self-Defense Limitation

 In his third issue, appellant contends the trial court erred by limiting his claim
of self-defense in the jury charge. The jury charge included an instruction on self-defense and the following limitation to self-defense:

 You are further instructed as part of the law of this case, and as a
qualification of the law on self-defense, that the use of force by a
defendant against another is not justified if the defendant sought an
explanation from or discussion with the other person concerning the
defendant's differences with the other person while the defendant was
carrying a weapon in violation of the law.


 When a defensive issue is raised by the evidence and a charge on the issue is
properly requested, the issue must be submitted to the jury. Muniz v. State, 851
S.W.2d 238, 254 (Tex. Crim. App. 1993). If raised by the evidence and requested by
the State, an instruction limiting a self-defense charge is warranted. Williams v. State,
35 S.W.3d 783, 786 (Tex. App.--Beaumont 2001, pet. ref'd). 

 Section 9.31(b)(5) sets forth the following limitation to claim of self-defense:

 The use of force against another is not justified if the actor sought an
explanation from or discussion with the other person concerning the
actor's differences with the other person while the actor was:



 carrying a weapon in violation of Section 46.02; or

 possessing or transporting a weapon in violation of Section 46.05.



Tex. Penal Code Ann. § 9.31(b)(5) (Vernon Supp. 2002).


 There was evidence that appellant confronted Vinsonhaler about "cheating"
him on the price of cigarettes. Appellant contends the statement, "Yeah, you want to
f*** with me now," was a rhetorical statement. We disagree.

 A verbal confrontation arises when one seeks an explanation or discussion
under section 9.31(b)(5). Bumguardner v. State, 963 S.W.2d 171, 175 (Tex.
App.--Waco 1998, pet. ref'd) (holding "If you want that ugly m-f, you can have
him," qualified as seeking explanation or discussion). The statement, "I cheated you? 
I cheated you? Did I cheat you? I cheated you, you motherf***er," qualifies as
seeking an explanation or discussion. See Williams, 35 S.W.3d at 786 (wanting to
talk about replacing broken reflector qualified as seeking explanation or discussion). 
Because there was evidence that appellant sought an explanation or discussion with
Vinsonhaler concerning differences appellant had with Vinsonhaler, the trial court
did not err in submitting the limiting instruction. 

 We overrule appellant's third issue.


Character Evidence

 In his fourth issue, appellant contends the trial court erred by excluding
character testimony that he is not "quick tempered." At trial, appellant attempted to
elicit character testimony from his wife:

 Defense Counsel: I want to talk to you about the type of person that
Freddie is.


 Witness: Yes, ma'am.


 Defense Counsel: Can you describe his personality or demeanor?


 Witness: He's quiet. He doesn't -


 Prosecutor: Objection. Improper character testimony, not the proper
foundation, and not the proper question.


 Trial Court: Sustained.


 Defense Counsel: Was he argumentative?


 Prosecutor: Same Objection.


 Defense Counsel: May I respond?


 Trial Court: No.


 Defense Counsel: Well, let me ask you, Ms. Walker, did he have a
propensity for violence?


 Witness: No.


 Defense Counsel: Do you have an opinion, Ms. Walker, about whether
or not Mr. Walker is a peaceful person?


 Witness: Yes, he is.


 After the State cross-examined Mrs. Walker, appellant offered the following
bill of exceptions:

 Defense Counsel: Ms. Walker, I'm going to ask you a few questions
outside the presence of the jury. What I want to talk to you about is
your husband's character.


 Witness: Uh-huh.


 Defense Counsel: Could you describe his demeanor and his personality,
please?


 Witness: He's nice, quiet, and he doesn't talk a lot.


 Defense Counsel: Is he argumentative?


 Witness: No, he's not.


 Defense Counsel: Do you know him to get into arguments with
strangers?


 Witness: He don't do that.


 Defense Counsel: Is he quick tempered?


 Witness: No, he's not.


 Defense Counsel: Is he likely to fly off the handle?


 Witness: No.


 Defense Counsel: Have you had an opportunity to watch him at work?


 Witness: Yes.


 Defense Counsel: Have you gone up there to see him?


 Witness: Yes.


 Defense Counsel: Have you seen his interaction with customers?


 Witness: Yes.


 Defense Counsel: Have you ever seen him get angry and strike at a
customer?


 Witness: No.


 Defense Counsel: Have you ever seen him get angry or strike at his
family members?


 Witness: No.


 Defense Counsel: Is it in his nature to pick fights?


 Witness: No.


 Defense Counsel: How does he respond to a fight or argument?


 Witness: He will leave. He doesn't talk. He'll tell you he don't like
arguing. He doesn't like it.


 Defense Counsel: That's all I have, Judge.


 Appellant contends evidence that he is not quick tempered was improperly
excluded. Assuming, without deciding, that it was error to exclude the evidence, the
error did not affect the substantial rights of appellant. See Potier v. State, 68 S.W.3d
657, 666 (Tex. Crim. App. 2002) (standard for reviewing erroneous exclusion of
evidence is whether substantial right of party is affected). Evidence was introduced
through the same witness that appellant did not have a propensity for violence and
that he was a peaceful person. Moreover, appellant's manager, sister, two cousins,
and the witness in the store, all testified that appellant was peaceful, never became
abusive or aggressive, and had no propensity for violence. Any error in excluding
evidence that appellant was not quick tempered was harmless when five other
witnesses testified appellant was peaceful and had no propensity for violence. See
Sosa v. State, 845 S.W.2d 479, 485-86 (Tex. App.--Houston [1st Dist.] 1993, pet.
ref'd) (holding exclusion of character evidence harmless when other witnesses testify
to similar evidence).

 We overrule appellant's fourth issue.

Improper Prosecutorial Comments

 In his fifth point of error, appellant contends the prosecutor improperly elicited
testimony that referred to appellant's silence after the police arrived. During cross-examination of Officer J.J. Brieden, defense counsel asked the following questions:

 Defense Counsel: And during the time that you had any dealings with
Mr. Walker that evening, did he ever act aggressive or belligerent, or
ugly around you?


 Brieden: No, sir, he never said anything.


 Defense Counsel: So, he certainly wasn't mouthy?


 Brieden: No, sir.


After cross-examination, the prosecutor approached the bench:

 Prosecutor: Judge, as I indicated, I believe on cross-examination
counsel asked the officer about the defendant's cooperativeness and if
the defendant said anything to him or talked with him. And in view of
that, I wish to ask the witness - - and again, I would ask to do it. I've
approached the Bench in an abundance of caution and trying to be fair
here. The question I want to ask is this: As the defendant walked from
the back of the store and came out the door, did he make any attempt to
explain to you what happened out there? That's basically it.


 Defense Counsel: Judge, we would - - clearly, the defendant - - clearly,
Mr. Walker was in custody at the time. We would object to there being
any attempt by the prosecutor to elicit statements that were made or the
fact there no statements made, which would be a form of communication
by Mr. Walker, at the time as being a violation of the rules setting out
any kind of interrogation of a suspect in custody.


 Court: Overruled. He will be able to ask that question. Bring the jury
in.


 The prosecutor then asked Officer Brieden the following question:


 Prosecutor: During cross-examination, counsel asked you about any
conversation you had or anything you said or that the defendant said to
you when he was coming out of the store or after you got him out of the
store. I want to ask you this: As he was coming out of the store, did the
defendant attempt in any way to explain to you what had happened out
there? 


 Defense Counsel: Objection. Objection.


 Court: Overruled.


 Brieden: No, sir.


 Prosecutor: No further questions.


 Although comments concerning a defendant's post-arrest silence are a violation
of the Fifth Amendment prohibition against self-incrimination, a defendant can open
the door by soliciting testimony concerning post-arrest silence. Bell v. State, 935
S.W.2d 958, 962 (Tex. App.--Waco 1994, no pet.) (holding prosecutor may refer to
accused's failure to testify when appellant has already introduced it through another
witness). We hold the trial court did not err by allowing the prosecutor to ask about
appellant's post-arrest silence because appellant's counsel had already referred to it.

 We overrule appellant's fifth point of error.


Conclusion

 We affirm the judgment of the trial court.


 

 Tim Taft

 Justice


Panel consists of Justices Mirabal, Taft, and Smith. (1)

Do not publish. Tex. R. App. P. 47.4.





 
1. The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First
District of Texas at Houston, participating by assignment.