Affirmed and Memorandum Opinion filed April 28, 2009








Affirmed and Memorandum Opinion filed April 28, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00605-CR

_______________

 

RAY DAVON WOODARD, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                       
                                        

On Appeal from the 241st District Court

Smith County, Texas

Trial Court Cause No. 241-0143-08 

                                                                                                           
                                    

 

M E M O R A N D U M   O P I N I O N

A jury
convicted appellant Ray Davon Woodard of aggravated robbery, sentenced him to
twenty-seven years and six months= confinement, and assessed a fine of
$5,000.00.   Appellant challenges his conviction on the grounds that the
evidence is legally and factually insufficient to support the jury=s verdict and that the trial court
erred in excluding certain evidence.  We affirm.








I.  Factual and Procedural Background

In
December 2007, Tyler police department officer Chris Sharp responded to a call
reporting an aggravated robbery.  He was notified that the victim of the
robbery was following the suspects, who were driving a blue Lincoln.  Sharp
located the Lincoln and stopped it at a gas station.  Sharp and several back-up
officers arrested the four individuals who were inside the car: (1) driver
Korwin Jones, (2) front-seat passenger Dewaylon Kennedy, (3) back-seat
passenger Brian Mayfield, and (4) appellant, who was also a back-seat
passenger.  Officers recovered several items from the car, including an
unloaded handgun found under the front seat; from the back floorboard of the
vehicle, they recovered a bag of marijuana and a wallet containing items
belonging to Dominick Wright, the complainant.  








Wright
testified that he and his friend, Casey Parker, received a phone call earlier
that day from an individual who wanted to buy marijuana.  According to Wright,
he and Parker arranged to meet the caller at a local restaurant.  Wright
testified that shortly after he and Parker arrived at the restaurant, a blue
Lincoln pulled into the restaurant parking lot and two individuals exited the
car and approached Wright=s vehicle.  Wright identified one of these individuals as
appellant and the other as Kennedy.[1]  Wright
stated that he showed appellant and Kennedy a bag of marijuana and, after they
agreed on a price of $180.00, one of the men asked Wright for change for a
hundred-dollar bill.  Wright explained that when he produced his wallet to make
change, one of the men tried to take it.  According to Wright, when he
resisted, the other man produced a gun.  Wright testified that he then handed
the men his wallet and the marijuana, and appellant and Kennedy walked back to
the Lincoln.  When the assailants drove from the parking lot, Wright and Parker
followed in their vehicle.

Parker
testified that he was seated in the passenger seat of Wright=s vehicle when the robbery occurred. 
According to Parker, most of the transaction was conducted between Wright and
Kennedy, and they were the two who negotiated the price of the marijuana.  
Parker stated that Kennedy took Wright=s wallet and the marijuana, and he
thought appellant was the person carrying the gun.  Parker testified that he
recognized Kennedy because he knew him through some relatives.  

Jones
and Mayfield, the two individuals who remained in the Lincoln while appellant
and Kennedy robbed Wright, both testified.  Jones explained that he drove
Kennedy, Mayfield and appellant to buy the marijuana.  Jones testified that
appellant set up the drug purchase using Jones=s telephone.  He stated that Kennedy
and appellant got out of the car to buy the marijuana, but he did not see what
happened after that.  According to Jones, he did not see the gun or the
marijuana before or after the robbery, and he denied that Wright chased them
after the robbery.  Finally, Jones admitted that he had been charged with
possession of marijuana for his participation in the events of that night. 
Mayfield testified that appellant, not Kennedy, was carrying the wallet and
marijuana when the two returned to the Lincoln  after the robbery, and he
agreed that Wright and Parker followed their vehicle out of the parking lot
after the robbery.  Mayfield further testified that, when Wright and Parker
followed their vehicle, ARay [appellant] told Dewaylon [Kennedy] to get out and show
him [Wright] what=s up.  Dewaylon got out waving the gun.  And then Ray told
him to hurry up and get back in the car.@  Mayfield stated that he saw no one
but Kennedy with the gun that night.  Like Jones, Mayfield was also charged
with possession of marijuana.








Kennedy,
who is appellant=s cousin, also testified.[2] 
He admitted that he had pleaded guilty to aggravated robbery for his role in
the offense and had been sentenced to thirty years= incarceration.  Kennedy testified
that, before the robbery, Mayfield, who occupied the front passenger-seat of
the Lincoln, quickly turned around and silently passed the gun to him when Kennedy
was sitting in the back seat; he stated that appellant was looking out of the
window when the exchange of the gun occurred.  Kennedy testified that he
immediately placed the gun in his jacket pocket.  He also stated that he
carried the gun in his pocket during the robbery and showed it to Wright, but
did not take it out of his pocket.  

During
an offer of proof conducted outside the presence of the jury, appellant=s trial counsel elicited testimony
from Wright and Parker that they both had consumed alcohol earlier on the day
of the offense.  Parker also testified that he had smoked a marijuana cigarette
earlier that day.  Both Wright and Parker stated that they had not been drunk,
nor had their observations of events been impacted by their drug or alcohol
use.  Appellant=s trial counsel also questioned Kennedy about appellant=s reaction when Kennedy displayed the
gun during the robbery.  Kennedy indicated that appellant appeared surprised
when Kennedy showed the gun to Wright.








After
hearing the evidence and argument of counsel, the jury found appellant guilty
of aggravated robbery and sentenced him to twenty-seven years and six months= confinement in the Texas Department
of Criminal Justice, Institutional Division, and assessed a $5,000 fine.  The
trial court rendered judgment in accordance with the jury=s verdict, and this appeal timely
ensued.

II.  Issues Presented

In his
first and second issues, appellant challenges the legal and factual sufficiency
of the evidence to support his conviction.  In issue three, appellant contends
the trial court erred in excluding evidence that would have impeached the
testimony of two of the eyewitnesses.  In his fourth issue, appellant argues
that the trial court erred in excluding testimony concerning his reaction to
Kennedy=s exhibition of a firearm in the
commission of the offense.

III.  Analysis

A.        Sufficiency of the Evidence

1.         Standard of Review

When
reviewing the legal sufficiency of the evidence, we do not ask whether we
believe the evidence at trial established guilt beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318B19 (1979).  Rather, we examine all
the evidence in the light most favorable to the verdict to determine whether
any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt.  Id. at 319; Mason v. State,
905 S.W.2d 570, 574 (Tex. Crim. App. 1995) (en banc).  Our review of the
evidence includes both properly and improperly admitted evidence.  Clayton
v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  We consider both
direct and circumstantial evidence, and all reasonable inferences that may be
drawn therefrom in making our determination.  Id.








When
reviewing the factual sufficiency of the evidence, on the other hand, we view
all the evidence in a neutral light and set aside the verdict Aonly if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.@  Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997) (en banc) (quoting Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996) (en banc)).  Before we may reverse for
factual insufficiency, we must first be able to say, with some objective basis
in the record, that the great weight and preponderance of the evidence contradict
the jury=s verdict.  Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  When reviewing the evidence, we
must avoid intruding on the factfinder=s role as the sole judge of the
weight and credibility of the witness testimony.  Johnson v. State, 23
S.W.3d 1, 9 (Tex. Crim. App. 2000) (en banc). We do not re‑evaluate the
credibility of witnesses or the weight of evidence, and we will not substitute
our judgment for that of the factfinder.  Johnson v. State, 967 S.W.2d
410, 412 (Tex. Crim. App. 1998). 

2.         Charged Offense








The jury
charge, in accordance with the indictment, authorized the jury to convict
appellant of aggravated robbery, either as a principal or as a party.  As is
applicable here, a person commits aggravated robbery, if in the course of
committing theft, he intentionally or knowingly threatens or places another in
fear of imminent bodily injury or death by using or exhibiting a deadly weapon. 
Tex. Penal Code Ann. '' 29.02(a)(2) (robbery); 29.03(a)(2)
(Vernon 2003) (aggravated robbery).  AA person is criminally responsible as
a party to an offense if the offense is committed by his conduct, by the
conduct of another for which he is criminally responsible, or by both.@  Id. ' 7.01(a).  In turn, a person is criminally
responsible for an offense committed by another if, Aacting with intent to promote or
assist the commission of the offense, he solicits, encourages, directs, aids,
or attempts to aid the other person to commit the offense[.]@ Id. ' 7.02(a)(2).  In determining whether
the accused acted as a party, we may consider events occurring before, during,
and after the commission of the offense and may rely on actions of the
defendant that show an understanding and a common design to commit the
prohibited act.  Payne v. State, 194 S.W.3d 689, 694 (Tex. App.CHouston [14th Dist.] 2006, pet. ref=d); see also Coleman v. State,
956 S.W.2d 98, 99B100, 103 (Tex. App.CTyler 1997, pet. ref=d).  Circumstantial evidence may be
sufficient to establish a defendant=s guilt as a party to an offense.  Powell
v. State, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006).  

3.         Application

Appellant
asserts that the evidence is legally and factually insufficient because 

[t]he
record is devoid of any evidence that [a]ppellant knew that Kennedy was going
to use the gun as a deadly weapon during the offense.  It might have been
legitimate for the jury to infer that [a]ppellant became aware of Kennedy=s intent to use the weapon when he actually produced
the weapon at the window [of the complainant=s
vehicle]; however, the inference would not have extended to proof that [a]ppellant
actually knew in advance that Kennedy planned to rob Wright and use a deadly
weapon in the commission of the offense. 

There is
no dispute that appellant and Kennedy were the individuals who approached
Wright in his vehicle, or that a deadly weapon was used in the commission of
the offense.  Both Wright and Parker testified that Kennedy grabbed Wright=s wallet and the marijuana as
appellant held the gun.  Only Kennedy, appellant=s cousin, tesitified that it was he
and not  appellant who produced the gun during the robbery.  Although Mayfield
testified that he saw Kennedy with the gun that night, Mayfield did not see the
actual robbery, and Jones denied seeing a gun at all that evening.  The jury
was free to believe or disbelieve any portion of the witnesses= testimony.  See Jones, 984
S.W.2d at 257.  Thus, the jury could have found Wright and Parker more credible
and reasonably concluded that appellant was the individual who displayed the
gun during the robbery.[3]








The
record also contains sufficient evidence to support appellant=s conviction for aggravated robbery
under the law of parties.  First, Kennedy explained that appellant was seated
next to him when Mayfield passed Kennedy the gun.  Although Kennedy stated
later that appellant was looking out the window at the moment Mayfield handed
him the weapon, the jury was free to disbelieve this portion of his testimony.
Thus, the jury reasonably could have inferred that appellant was aware Kennedy
had the gun before the offense was committed.  Kennedy also indicated that he
at least partially pulled the gun out of his left jacket pocket when appellant
was standing on his left-hand side.  Finally, Mayfield stated that, after the
offense had been committed, appellant directed Kennedy to get out of the
vehicle and show Wright and Parker the gun.  Appellant=s actions before, during, and after
the commission of the offense show an understanding and common design to commit
aggravated robbery, i.e., that appellant was a party to the offense of
aggravated robbery.[4]








Viewing
the evidence in the light most favorable to the verdict, we conclude that a
rational trier of fact could have found appellant guilty as a principal or a
party to aggravated robbery.  Further, viewing all the evidence in a neutral
light, we cannot say that the jury=s verdict is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust, nor is
the verdict against the great weight and preponderance of the evidence.  We
therefore overrule appellant=s first and second issues challenging the legal and factual
sufficiency of the evidence.

B.        Evidentiary Rulings

1.         Standard of Review

We
review the trial court=s evidentiary rulings for abuse of discretion.  Montgomery
v. State, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990) (en banc).  We will
not disturb the trial court=s ruling if it is Awithin the zone of reasonable
disagreement.@  Winegarner v. State, 235 S.W.3d 787, 790 (Tex. Crim. App.
2007).  Instead, we will uphold the ruling if it is reasonably supported by the
record and correct on any theory of law applicable to the case.  Willover v.
State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

2.         Exclusion of Impeachment
Evidence

            In issue
three, appellant asserts that the trial court improperly denied him the
opportunity to question Wright and Parker about whether they were under the
influence of marijuana or alcohol at the time of the offense.  Although Texas
Rule of Evidence 608(b) expressly prohibits the use of Aspecific instances of conduct of a
witness, for the purpose of attacking or supporting the witness=[s] credibility, other than
conviction of crime as provided in Rule 609,@[5] an exception to the rule permits
such impeachment if there is a showing that intoxication from alcohol or drug
use impaired the witness=s ability to perceive the events in question at the time they
occurred.  See Lagrone v. State, 942 S.W.2d 602, 612B13 (Tex. Crim. App. 1997) (en banc). 









When
questioned by the State during appellant=s offer of proof, Wright affirmed
that he was not drunk and that nothing he observed was affected by the fact
that, earlier in the day, he had consumed Aa couple beers.@  Similarly, Parker testified that
smoking a marijuana cigarette and drinking an alcoholic beverage earlier in the
day did not Ain any way affect@ what he saw that night.  Thus, the State produced
uncontradicted evidence that neither witness=s ability to perceive the offense was
impaired by drug or alcohol intoxication at the time of the offense.  

Appellant
made no showing that these witnesses= Aperceptual capacity [was] physically
impaired by the intoxicating effects of alcohol or drugs during their
observation of pertinent events.@  Id.  We therefore conclude
that the trial court did not abuse its discretion by refusing to permit
appellant to question Wright and Parker about these specific instances of
conduct.  See id.  We overrule appellant=s third issue.

3.         Hearsay Objection

In his
fourth issue, appellant argues that the trial court erred by excluding Kennedy=s testimony that appellant appeared
surprised when Kennedy exhibited the gun during the robbery.  The trial court
sustained the State=s hearsay objection to this line of questioning.[6]  
Later, appellant made an offer of proof, in which Kennedy stated that appellant
looked surprised, Alike he didn=t know [Kennedy] had the gun in [his] pocket.@








Hearsay
is Aa statement, other than one made by
the declarant while testifying at the trial or hearing, offered in evidence to
prove the truth of the matter asserted.@  Tex.
R. Evid. 801(d).  In turn, a Astatement@ includes Anonverbal conduct of a person, if it
is intended by the person as a substitute for verbal expression.@  Tex.
R. Evid. 801(a).  Thus, conduct not intended as a substitute for verbal
expression is not hearsay.  Id.; see also Johnson v. State, 987
S.W.2d 79, 90 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d) (op. on reh=g).  

Here,
nothing in the record indicates that appellant=s Asurprised@ reaction was intended as a
substitute for any verbal communication to Kennedy.  Cf. Graham v. State,
643 S.W.2d 920, 927 (Tex. Crim. App. 1981) (en banc) (stating that victim=s conduct in making a shooting motion
made when shown defendant=s photograph was intended to indicate her belief that
defendant was individual who had shot her and, thus, testimony concerning this
conduct was hearsay).  Thus, we conclude that appellant=s reaction to Kennedy=s use of the gun during the robbery
does not constitute a Astatement,@ and Kennedy=s testimony regarding appellant=s reaction was erroneously excluded
under the hearsay rule.  








But we
must disregard any error, other than constitutional error, unless it affects
the defendant=s Asubstantial rights.@[7] Tex.
R. App. P. 44.2(b).  When evaluating harm from non-constitutional error,
we must examine the record as a whole.  See Ray v. State, 178 S.W.3d
833, 836 (Tex. Crim. App. 2005) (citing Morales v. State, 32 S.W.3d 862,
867 (Tex. Crim. App. 2000)).  A[I]f we are fairly assured that the error did not influence
the jury or had but a slight effect, we conclude that the error was harmless.@  Id.  Here, as discussed more
fully above, two eyewitnesses to the robbery stated that appellant was the
gunman.  But even if appellant was not the gunman and was surprised when
Kennedy exhibited a gun, our review of the entire record indicates there is
ample evidence that appellant participated in the robbery as a party: the
witnesses agreed that appellant and Kennedy were the two who approached Wright=s vehicle; Wright and Parker
testified that one of the two individuals displayed a gun during the robbery
and the unarmed individual not only struggled with Wright for Wright=s wallet but also grabbed the bag of
marijuana; and two witnesses testified that appellant encouraged Kennedy to Awave@ the gun at Wright after the robbery
in an attempt to dissuade Wright from chasing after appellant and his cohorts. 


Under
these circumstances, we are fairly assured that the trial court=s error in excluding Kennedy=s testimony regarding appellant=s alleged Asurprise@ about the presence of the gun did
not influence the jury or had but a slight effect.  See id.;  Tex. R. App. P. 44.2(b).  We therefore
overrule appellant=s fourth and final issue.

IV.  Conclusion

Having overruled appellant=s four issues, we affirm the judgment
of the trial court.

 

 

 

/s/        Eva M. Guzman

Justice

 

 

Panel consists of Justices Yates,
Guzman, and Sullivan.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  When
questioned after the suspects had been apprehended on the day of the offense,
Wright made several conflicting statements to police.  He first indicated that
he had been robbed when two individuals approached him and asked for change. 
Next, he told them he was at the restaurant to buy marijuana rather than sell
it.  Then, he admitted he was the one selling the drugs, but stated that
Kennedy was the individual with the gun.  Finally, at trial, Wright insisted
that appellant was the gunman during the robbery, stating that he had
remembered this fact by Areviewing stuff in [his] head@ and talking to Parker about a week after the
offense.  Wright acknowledged at trial that he had previously made the
contradictory statements.





[2]  During a bench
conference at the outset of Kennedy=s
testimony, Kennedy attempted to refrain from testifying by invoking his Fifth
Amendment right.  The trial judge explained to Kennedy that he did not have a
Fifth Amendment privilege regarding the facts surrounding this offense because
Kennedy had pleaded guilty to aggravated robbery for his participation in the
offense, been sentenced, and waived his right to appeal.  The trial judge
informed Kennedy that he had to answer questions regarding the offense or he
could be held in contempt, which would result in a six-month sentence and a
$500 fine for each refusal to answer.  When Kennedy later refused to answer
questions, the trial court excused the jury and reiterated these instructions. 
The trial court also had to instruct Kennedy to answer several times.  Outside
the presence of the jury, the State asked for permission to treat Kennedy as a
hostile witness, and the trial court acquiesced to this request.





[3]  Although the
prosecutor speculated during closing argument that Kennedy used the gun during
the robbery, argument of attorneys is not evidence.  See Motilla v. State,
38 S.W.3d 821, 824 (Tex. App.CHouston [14th
Dist.] 2001) (stating that arguments by counsel are not evidence), rev=d on other grounds, 78 S.W.3d 352 (Tex. Crim. App. 2002); Mata v. State, 1 S.W.3d
226, 228 (Tex. App.CCorpus Christi 1999, no pet.) (A[I]t is axiomatic that argument of counsel is not
evidence.@).





[4]  See Johnson
v. State, 6 S.W.3d 709, 711 (Tex.
App.CHouston [1st Dist.] 1999, pet. ref=d) (concluding that sufficient evidence supported
aggravated robbery conviction under law of parties because defendant, who was
was not present when robbery occurred, was seen in the store immediately prior
to the robbery, rented and drove get-a-way vehicle, and was apprehended driving
vehicle with two identified assailants); Escobar v. State, 28 S.W.3d
767, 774 (Tex. App.CCorpus Christi 2000, pet. ref=d) (holding that evidence was sufficient to support
aggravated robbery conviction under law of parties because defendant got into
get-a-way vehicle with stolen items while other party pointed a firearm at
victim); McGee v. State, 909 S.W.2d 516, 518 (Tex. App.CTyler 1995, pet. ref=d) (stating that it is Apermissible to
infer that a group of people have agreed to work on a common project when the
action of each is consistent with the realization of the common goal@); see also Anderson v. State, No.
14-00-00810-CR, 2001 WL 1426676, at *2 (Tex. App.CHouston [14th Dist.] Nov. 15, 2001, pet. ref=d) (not designated for publication) (concluding
evidence was legally and factually sufficient to support defendant=s conviction for aggravated robbery as a party, even
though defendant told armed cohort to put weapon away, because defendant
continued to participate in robbery after becoming aware that a gun was being
used).  





[5]  Tex. R. Evid. 608(b).





[6]  The State
argued:

Judge, the objection is going to be that he - - be a hearsay
objection.  What Mr. Davidson [defense attorney] is attempting to do is use
nonverbal - - under [Texas Rule of Evidence] 801, a statement is either verbal,
written, or nonverbal.

And at this point in time, Mr. Davidson=s attempting to use a nonverbal reaction as a substitute for a
statement. . . .  He=s been attempting to do it for the last line of
questioning where he=s attempting to say that [appellant] was surprised
[when Kennedy took out the gun].

Well, Judge, what he=s attempting to
do clearly, under Rule 801, is a statement, and it=s a nonverbal communication that is a substitute for
him being able to say [appellant] was surprised by it, Judge.  It is clearly
hearsay, and we would object.

Appellant replied to this argument by stating, AJudge, the question is, did you observe the reaction
when you pulled out the gun to each of the other three people that were there? 
And the answer was yes.  And then the question was, well, what did you observe
about the reactions?@  The trial court then sustained the State=s objection and later permitted appellant to make an
offer of proof regarding this issue.





[7]  We note that
appellant has not briefed the appropriate harm analysis applicable to the trial
court=s error.  Here, however, we cannot say the trial court=s error rose to the level of a constitutional
violation because (a) the exclusion of this evidence was not grounded on an
evidentiary rule prohibiting admission of the testimony offered and (b)
appellant was able to present his defense that he was unaware Kennedy was armed
before the robbery occurred through other testimony and his attorney=s argument.  See Ray v. State, 178 S.W.3d 833,
835B36 (Tex. Crim. App. 2005).  Thus, we apply a
non-constitutional harm analysis to the trial court=s error.