Amos **CHAIRS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–92–462–CR.

Court of Appeals of Texas, Corpus Christi.

May 26, 1994.

Knute L. Dietze, Elaine Sommers Brown, Victoria, for appellant.

Wiley L. Cheatham, Dist. Atty., Robert C. Lassmann, Asst. Dist. Atty., Cuero, for appellee.

Before SEERDEN, C.J., and DORSEY and YAÑEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

Appellant, Amos Chairs, was convicted after jury trial of aggravated sexual assault. He was sentenced to a prison term of 55 years. He appeals claiming that the trial court coerced a conviction from an allegedly deadlocked jury, that jury misconduct occurred, and that the State exercised its peremptory strikes during jury selection in a racially motivated manner to exclude all members of Appellant's race. We affirm.

Because Appellant does not challenge the sufficiency of the evidence, we recite only those facts pertinent to each of Appellant's points of error.

## Jury Coercion

By his first point of error, Appellant asserts that the trial court erred by coercing the jury into reaching a verdict after the jury indicated that it was deadlocked. Specifically, Appellant alleges that the court's inquiry about the numerical division of the jury constituted coercion requiring reversal of the judgment. We disagree.

The jury retired to deliberate Appellant's guilt or innocence at 3:25 p.m. on a Friday afternoon. At 5:00 p.m. the jury requested certain information that had apparently not been introduced at trial. The court referred the jury to the charge. At 5:25 p.m., the jury submitted the following note to the court:

1) Should the Jury feel they need more evidence and testimony, could you tell us what procedure would be taken?

2) We understood while in the courtroom, that we would be given the other fingerprints, which were presented into evidence.

3) We also understood we would be given Johnny Eakins statement.

\* Why are we not being given this information as stated?

*The court responded by note:* "All of the exhibits which have been admitted into evidence have been delivered to the jury room." At 6:38 p.m. the court received another note from the jury: "We cannot agree unanimously at this time based upon the evidence in our possession and testimony the guilt or innocence of Amos Chairs." The court proposed an inquiry as to the vote of the jury. Appellant affirmatively stated that he had no objection to the court's inquiry which read: "Ladies and gentlemen of the jury: What is the present vote? Example: 6 to 6, 4 to 8." At 7:05 p.m., the jury indicated that ten jurors voted guilty and two voted not guilty, whereupon Appellant moved for a mistrial citing the jury's earlier indication that it could not unanimously agree on a verdict based upon the evidence in its possession. The court denied Appellant's mistrial motion. At 8:30 p.m., without further communication from the court, the jury announced that it had reached its verdict.

Ordinarily, error that was never raised in the trial court, may not be urged for the first time on appeal. TEX.R.APP.P. 52(a); *Nelson v. State,* 607 S.W.2d 554, 555 (Tex.Crim.App.1980). Appellant now urges that the inquiry of the court regarding the jury's numerical division was reversible error, despite Appellant's agreement to that inquiry at the time it was made. The Supreme Court of the United States has held a similar inquiry to be *per se* reversible error without the necessity of an objection at trial to preserve the complaint. *Brasfield v. United States,* 272 U.S. 448, 450, 47 S.Ct. 135, 136, 71 L.Ed. 345 (1926). However, since *Brasfield,* the Supreme Court has noted that its decision was not based on any constitutional provision, was an exercise of its supervisory powers, and need not be followed by state courts nor even by lower federal courts when reviewing state proceedings. *Lowenfield v. Phelps,* 484 U.S. 231, 239 & n. 3, 108 S.Ct. 546, 552 & n. 3, 98 L.Ed.2d 568 (1988) (combination of supplemental charge and polling "whether further deliberations would be helpful" held not coercive).

We hold that the mere inquiry of the trial court regarding the numerical split among the jurors was not such an egregious error that it requires reversal when, as here, the Appellant was apprised of the exact wording of the inquiry, voiced no objection, consented, and then waited until after the jury's response to urge his motion for mistrial based on a prior note from the jury. *See Odom v. State,* 682 S.W.2d 445, 448 (Tex.App.—Fort Worth 1984, pet. ref'd) (inquiry as to numerical division of jury not reversible error *per se* ). We overrule Appellant's first point of error.

## Jury Misconduct

By his second point, Appellant complains that the trial court erred in overruling his motion for mistrial after he produced evidence that a juror communicated with someone during deliberations. The DeWitt County Assistant District Attorney testified that a spectator, attending the trial on behalf of the victim's family, told him that one juror stuck his head out of the deliberation room

door and said he had to make a trip to Waco. The court's bailiff testified that he had no knowledge of the communication. No further evidence was adduced. Neither the spectator nor any juror testified. There is no allegation that any other communication occurred.

It is generally presumed that a defendant is injured whenever an impaneled juror converses with an unauthorized person about the case. *Romo v. State,* 631 S.W.2d 504, 506 (Tex.Crim.App.1982). *See also* TEX. CODE CRIM.PROC.ANN. art. 36.22 (Vernon 1981); TEX.R.APP.P. 30(b)(7). The defendant, however, must establish that if a communication occurred between a juror and someone else, that the communication involved the specific case at trial and was more than an innocuous, unrelated comment or exchange. *See Romo,* 631 S.W.2d at 506; *Ex parte Watson,* 606 S.W.2d 902, 906 (Tex. Crim.App.1980); *Starvaggi v. State,* 593 S.W.2d 323, 327 (Tex.Crim.App.1979). Here, the comment by the juror clearly did not relate to Appellant's proceeding, but referred only to the juror's intended travel plans. Under these circumstances, the trial court properly refused Appellant's motion for mistrial. *See Romo,* 631 S.W.2d at 506. We overrule Appellant's second point of error.

### *Batson* Challenge

In his third point of error, Appellant alleges that, after Appellant established a prima facie case of purposeful discrimination in jury selection by the State under *Batson v. Kentucky,*[1] the trial court erred in not granting his motion to quash the jury. Appellant claims that the State failed to provide race-neutral explanations for its use of peremptory strikes to exclude the three black members on the jury panel list, therefore, he is entitled to a reversal of his conviction. *See Batson,* 476 U.S. at 101, 106 S.Ct. at 1725. *See also* TEX.CODE CRIM.PROC.ANN. art. 35.-261 (Vernon 1989). We disagree.

Appellant alleged that the State purposefully discriminated against Pearlene Burton, Elmira Williams, and Marvin Kuykendall. The prosecutor testified that he struck Pear-

lene Burton because she indicated that she knew Appellant; that her children had attended school with him; that she knew Appellant's mother "to see her;" and that she had read the papers and heard gossip about the facts of the case from her own children.

The prosecutor testified that Elmira Williams stated that she had a son James. The prosecutor then produced a file card from his office indicating that James Williams had been prosecuted in 1990 for burglary. Additionally, Mrs. Williams' employers had experienced some "law enforcement troubles" in the county and the prosecutor suspected that might have an effect on Mrs. Williams. The prosecutor was also troubled by Mrs. Williams' negative response to questions concerning any prior involvement with a criminal case, despite the burglary conviction of James Williams, believed by the prosecutor to be Mrs. Williams' son.

The prosecutor testified that Marvin Kuykendall indicated that he had no children and that he had never been interested in the prosecution or defense of a criminal case. On direct inquiry, however, Mr. Kuykendall admitted that he had a son, Marvin Kuykendall, Jr. The prosecutor's card file revealed that Marvin, Jr. had been convicted in 1979 of attempted murder and aggravated assault, and in 1984 Marvin, Jr. had been convicted of delivery of marijuana and assessed ten years in prison and a three thousand dollar fine.

Appellant asserts that the State failed to articulate a satisfactory, race-neutral reason for its peremptory strikes because the prosecutor never established by direct questioning that Mrs. Williams' son, James, and Mr. Kuykendall's son, Marvin, Jr., were the same James and Marvin, Jr. known to the prosecutor as convicted felons. The prosecutor's file cards for James and Marvin, Jr. were introduced into evidence. The prosecutor testified that he checked his file after receiving the juror information cards but before voir dire and that, to the best of his understanding, prospective jurors Williams and Kuykendall were related to the convicted persons listed in his card file. The trial court found that the State had "exercised its peremptory

---

1. 476 U.S. 79, 98, 106 S.Ct. 1712, 1723, 90    L.Ed.2d 69 (1986).

challenges in a nondiscriminatory and racially neutral" manner.

We review the trial court's assessment of a *Batson* challenge by determining whether the trial court's decision was "clearly erroneous." *Williams v. State*, 804 S.W.2d 95, 101 (Tex.Crim.App.), *cert. denied*, 501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991).

> We examine the record to determine whether the race neutral explanation provided by the prosecutor is supported by the record or has the appellant introduced sufficient evidence to establish (or rebut) that the prosecutor expended his peremptory challenges in such a manner that it can rationally be inferred that he engaged in purposeful racial discrimination.

*Id.* While a prosecutor must give a "clear and reasonably specific" explanation of his "legitimate reasons" for exercising his peremptory strikes, "we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause." *Batson*, 476 U.S. at 98 & 99 n. 20, 106 S.Ct. at 1723 & 1724 n. 20.

After viewing the evidence adduced relevant to Appellant's *Batson* claim in the light most favorable to the trial court's ruling, we hold that the explanations provided by the State have not been overcome by Appellant. *See Williams*, 804 S.W.2d at 101. The record reveals ample support for the trial court's finding that there was no purposeful discrimination in the State's exercise of its peremptory challenges. *Id.* Finding no error, we overrule Appellant's third point.

The judgment of the trial court is **AFFIRMED.**