

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00317-CR

**DERRICK DWAYNE GRANT,**

                                **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                **Appellee**

---

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2007-1417-C2**

---

## DISSENTING OPINION

---

The majority reverses Derrick Dwayne Grant's burglary conviction because of a finding that "there was clear error in the trial court's acceptance of the State's proposed race-neutral reasons for striking a black member of the jury panel." However, because I believe Grant failed to rebut the State's race-neutral reasons for exercising peremptory challenges against the three African American venire members in question, I would hold that the court did not abuse its discretion by denying Grant's *Batson* challenge. Thus, I respectfully dissent.

## Lack of Questioning is Not
## a Dispositive Factor

My primary disagreement with the majority arises from the following paragraph in the majority opinion:

> The State must engage in meaningful voir dire examination on a subject it alleges it is concerned about. *See Miller-El*[*v. Dretke*], 545 U.S. 231, 246, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2006). If the State does not engage in meaningful voir dire examination, that failure is some evidence that the asserted reason for the strike was a pretext for discrimination. *Reed v. Quarterman*, 555 F.3d 364, 376 (5th Cir. 2009).

I agree that the State's failure to engage in meaningful voir dire examination is a factor which may be considered, but I also believe that in the vast majority of cases a *Batson* challenge will not be successful if it rests solely on this factor.

In my view, the majority misreads *Miller-El* and *Reed*. As the Fifth Circuit explained in *Reed*, the Supreme Court considered the State's failure to engage in a meaningful voir dire examination in the context of a comparative analysis between prospective jurors who were struck and similarly situated jurors who were not.

> The Court's treatment of Miller-El's *comparative analysis* also reveals several principles to guide us. First, we do not need to compare jurors that exhibit *all* of the exact same characteristics. If the State asserts that it struck a black juror with a particular characteristic, and it also accepted nonblack jurors with that same characteristic, this is evidence that the asserted justification was a pretext for discrimination, even if the two jurors are dissimilar in other respects. Second, if the State asserts that it was concerned about a particular characteristic but did not engage in meaningful voir dire examination on that subject, then the State's failure to question the juror on that topic is some evidence that the asserted reason was a pre-text for discrimination. Third, we must consider only the State's asserted reasons for striking the black jurors and compare those reasons with its treatment of the nonblack jurors.

*Reed*, 555 F.3d at 376 (first emphasis added) (citations omitted).

In *Miller-El*, the Court conducted such a comparative analysis with respect to an African-American venire member (Fields) whom the prosecutor stated he struck primarily because "he said that he could only give death if he thought a person could not be rehabilitated." *Miller-El*, 545 U.S. at 243, 125 S. Ct. at 2327. The Court compared Fields's voir dire examination with that of "a number of white panel members" who expressed similar sentiments on rehabilitation but whom the prosecutor "accepted with no evident reservations." *Id.* at 244, 125 S. Ct. at 2327. In particular, the Court focused on three such jurors who "were not questioned further and drew no objection." *Id.* at 245, 125 S. Ct. at 2328.

In addition, the Court expressed reservations about the credibility of the prosecutor's later explanation that he also struck Fields because his brother had a previous conviction.[1] *Id.* at 246, 125 S. Ct. at 2328 ("It would be difficult to credit the State's new explanation, which reeks of afterthought."). Although the Court did note the prosecutor's failure to question Fields "about the influence his brother's history might have had," the Court's reference to this issue served only to "underscore" the "unlikelihood that his position on rehabilitation had anything to do with the peremptory strike" exercised against him.[2] *Id.* at 245-46, 125 S. Ct. at 2328.

---

[1]    When defense counsel suggested that the prosecutor had misrepresented Fields's views on rehabilitation, "he neither defended what he said nor withdrew the strike. Instead, he suddenly came up with Fields's brother's prior conviction as another reason for the strike." *Miller-El v. Dretke*, 545 U.S. 231, 246, 125 S. Ct. 2317, 2328, 162 L. Ed. 2d 196 (2005) (citation omitted).

[2]    The Court engaged in a similar comparative analysis with respect to prospective juror Warren and observed in a footnote that the prosecutor had failed to question Warren about his brother-in-law's conviction, which the State had raised in a post-conviction *Batson* hearing as an additional reason for the strike. *Id.* at 250 n.8, 125 S. Ct. at 2330 n.8.

That a prosecutor's failure to engage in a meaningful voir dire examination of a potential juror is not, standing alone, a dispositive *Batson* factor is borne out by the Supreme Court's summation of its determination that the State violated *Batson* by striking Fields.

> In sum, when we look for nonblack jurors similarly situated to Fields, we find strong similarities as well as some differences. But the differences seem far from significant, particularly when we read Fields's *voir dire* testimony in its entirety. Upon that reading, Fields should have been an ideal juror in the eyes of a prosecutor seeking a death sentence, and the prosecutors' explanations for the strike cannot reasonably be accepted.

*Id.* at 247, 125 S. Ct. at 2329 (footnote omitted). The Court made no mention of the State's lack of questioning in this summation.

The majority also relies on what I shall refer to as the *Keeton* factors, one of which is "lack of questioning" or "a lack of meaningful questions." *See Whitsey v. State*, 796 S.W.2d 707, 713-14 (Tex. Crim. App. 1989) (citing *Keeton v. State*, 749 S.W.2d 861, 866 (Tex. Crim. App. 1988)). However, the Court of Criminal Appeals has made clear that the *Keeton* factors are not controlling.

> Appellant's contention that the objective factors discussed in *Keeton* control the analysis is not correct. These factors certainly may be considered in evaluating the trial judge's overruling of a *Batson* claim, *but they are not determinative*.

*Vargas v. State*, 838 S.W.2d 552, 554 (Tex. Crim. App. 1992) (emphasis added); *accord Bridges v. State*, 909 S.W.2d 151, 155 (Tex. App.—Houston [14th Dist.] 1995, no pet.).

### *Batson* Analysis

The *Batson* three-step process is well-established.

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller-El v. Cockrell*, 537 U.S. 322, 328-29, 123 S. Ct. 1029, 1035, 154 L. Ed. 2d 931 (2003) (citations omitted); *accord Snyder v. Louisiana*, 128 S. Ct. 1203, 1207, 170 L. Ed. 2d 175 (2008); *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008).

Grant informed the trial court, and it is not disputed, that the State struck the only three African-American venire members in the "strike zone," which were prospective jurors Veail, Franklin, and Hartfield. On appeal, Grant complains about the State's peremptory challenges against Veail and Franklin.[3]

The prosecutor explained that she struck Veail because Veail had stated in response to the State's voir dire questions that she might be familiar with the facts of the case. She had followed the media coverage of the burglary when it happened because her neighbor's daughter lived in the apartment complex where it occurred. The prosecutor explained that she was concerned Veail might know additional information about the complainant which might affect her ability to be fair and impartial.

The prosecutor explained that she struck Franklin because his juror card indicated that his wife worked at the same Wal-Mart as the defendant's girlfriend, and the prosecutor was concerned that information about the case may have been communicated because they work in the same location.

---

[3] The prosecutor explained that she struck Hartfield because she indicated on her juror card that she was a teacher, and the State struck all the teachers on the venire panel.

Grant responded to the State's explanations by first observing that the State had declined the court's opportunity to conduct additional questioning of individual venire members in chambers at the conclusion of the voir dire examination. Grant also complained that the State did not question Veail in more detail about her concerns or question Franklin at all about whether he had learned anything about the case through his wife.

A co-prosecutor replied by vouching for the stated grounds. He confirmed that the employment of Franklin's wife at the same location as Grant's girlfriend was a concern when they first received the juror cards.

Grant's *Batson* challenge focuses on the third step in the process—whether in light of the parties' submissions the defendant has shown purposeful discrimination. *See Snyder*, 128 S. Ct. at 1207; *Watkins*, 245 S.W.3d at 447. Resolution of his complaint should focus on two issues: (1) the burden of persuasion; and (2) the deference owed to the finder of fact.

> The ultimate plausibility of that race-neutral explanation is to be considered as part of the third step of the analysis, in which the trial court determines whether the opponent of the strike (usually the defendant) has satisfied his burden of persuasion to establish by a preponderance of the evidence that the strike was indeed the product of the proponent's purposeful discrimination. Whether the opponent satisfies his burden of persuasion to show that the proponent's facially race-neutral explanation for his strike is pre-textual, not genuine, is a question of fact for the trial court to resolve in the first instance.

*Watkins*, 245 S.W.3d at 447 (footnotes omitted); *see Purkett v. Elem*, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771, 131 L. Ed. 2d 834 (1995) (per curiam) ("the ultimate burden of

persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike").

"[A] trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Snyder*, 128 S. Ct. at 1207. And "in the absence of exceptional circumstances, we [sh]ould defer to [the trial court]." *Id.* at 1208 (quoting *Hernandez v. New York*, 500 U.S. 352, 366, 111 S. Ct. 1859, 1870, 114 L. Ed. 2d 395 (1991) (plurality opinion)); *accord Watkins*, 245 S.W.3d at 448 (trial court's decision should be examined "with great deference").

The majority focuses on the State's exercise of a peremptory challenge against Franklin, so I begin with him. The Court of Criminal Appeals has rejected a *Batson* claim raised against a similar peremptory challenge. In *Chambers v. State*, the State struck a venire member "primarily because she worked with appellant's sister at Wal-Mart." 866 S.W.2d 9, 25 (Tex. Crim. App. 1993). "Absent evidence of disparate treatment," the Court was unable to conclude that the trial court's rejection of the defendant's *Batson* challenge was erroneous. *Id.*

Here, there is one additional degree of separation in the pertinent relationships as the State struck Franklin because his wife worked with Grant's girlfriend. Nevertheless, this does constitute a facially valid, race-neutral basis for a strike. *See id.* Grant and the majority fault the prosecutor for failing to question Franklin about whether he had learned anything about the case through his wife's employment. However, the Court of Criminal Appeals has expressly rejected the notion that a

prosecutor's lack of questioning is a strong indicator of the prosecutor's discriminatory intent.

"While it is true that the lack of questioning might expose the weakness of a State's explanation, the State is not required to ask a specified rubric of questions." *Id.* at 24. Thus, appellate courts have repeatedly rejected *Batson* claims in which the appellant complained that the prosecutor's failure to ask questions of a challenged venire member indicated discriminatory intent. *See, e.g., Akeen v. State*, No. 05-04-01639-CR, 2006 Tex. App. LEXIS 127, at *22 (Tex. App.—Dallas Jan. 6, 2006, no pet.) (not designated for publication); *Smith v. State*, No. 07-00-00025-CR, 2003 Tex. App. LEXIS 2948, at *15-16 (Tex. App.—Amarillo Apr. 3, 2003, pet. dism'd, untimely filed); *Whitaker v. State*, 977 S.W.2d 869, 876 (Tex. App.—Beaumont 1998, pet. ref'd); *Tate v. State*, 939 S.W.2d 738, 745 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd).

It was Grant's burden to prove the prosecutor struck Franklin for a purposefully discriminatory reason rather than a race-neutral reason. *See Purkett*, 514 U.S. at 768, 115 S. Ct. at 1771; *Watkins*, 245 S.W.3d at 447. But Grant did not call any witnesses, cross-examine either prosecutor, present a comparative analysis with similarly situated white jurors, or otherwise contest the stated factual basis for the prosecutor's decision to strike Franklin. *See Vargas*, 838 S.W.2d at 556; *Akeen*, 2006 Tex. App. LEXIS 127, at *23. Therefore, because there are no "exceptional circumstances" presented under this record, I cannot say that the trial court's ruling with regard to Franklin is clearly erroneous. *See Snyder*, 128 S. Ct. at 1208; *accord Watkins*, 245 S.W.3d at 448.

With regard to the State's exercise of a peremptory challenge against Veail, Veail herself volunteered that she was familiar with the case because she had followed the media coverage of the burglary when it happened. She explained that she had done so because her neighbor's daughter lived in the apartment complex where it occurred. In response to Grant's *Batson* challenge, the prosecutor stated that she was concerned Veail might be privy to additional information about the complainant which might affect her ability to be fair and impartial. While the latter concern is somewhat speculative, the fact that Veail was admittedly familiar with the case was a sufficient race-neutral basis, standing alone, to justify the State's exercise of a peremptory challenge. *See C.E.J. v. State*, 788 S.W.2d 849, 856 (Tex. App.—Dallas 1990, writ denied) (State proffered race-neutral basis for strike of venire member who had read about case in newspapers, even though venire member stated that her previous knowledge would not affect her decision); *see also McGee v. State*, 909 S.W.2d 516, 520-21 (Tex. App.—Tyler 1995, pet. ref'd) (State proffered race-neutral basis for strike of venire member who lived near a family with same last name as defendants recently prosecuted in a high profile case); *Chairs v. State*, 878 S.W.2d 250, 253-54 (Tex. App.—Corpus Christi 1994, no pet.) (State proffered race-neutral basis for strike of venire member who knew appellant and his mother and who had learned about the case from the newspapers and "gossip" from her own children).

Grant complains that the State failed to inquire further about Veail's knowledge of the facts of the case or her familiarity with the complainant, but Grant failed to call any witnesses, cross-examine either prosecutor, present a comparative analysis with

similarly situated white jurors, or otherwise contest the stated factual basis for the prosecutor's decision to strike Veail. *See Vargas*, 838 S.W.2d at 556; *Akeen*, 2006 Tex. App. LEXIS 127, at *23. Accordingly, I would hold that Grant failed to meet his burden to prove the prosecutor struck Veail for a purposefully discriminatory reason rather than a race-neutral reason. *See Purkett*, 514 U.S. at 768, 115 S. Ct. at 1771; *Watkins*, 245 S.W.3d at 447. Therefore, because there are no "exceptional circumstances" presented under this record, I cannot say that the trial court's ruling with regard to Veail is clearly erroneous. *See Snyder*, 128 S. Ct. at 1208; *accord Watkins*, 245 S.W.3d at 448.

Finally, Grant argues that the prosecutor's stated grounds for striking Franklin and Veail are based on speculation and conjecture and are similar to the grounds recently rejected by the Supreme Court in *Snyder*. I disagree.

In *Snyder*, the voir dire record provided a much clearer basis for sustaining the defendant's *Batson* challenge. The prosecutor exercised a peremptory challenge against prospective juror Brooks because he appeared nervous and because the prosecutor was concerned that he might be inclined to return a hasty guilty verdict on a lesser-included offense to avoid a punishment trial because of his student-teaching responsibilities. *See Snyder*, 128 S. Ct. at 1208.

Focusing primarily on the second explanation, the Supreme Court noted that the trial court and attorneys questioned Brooks about his schedule and then the court at Brooks's suggestion contacted his dean. *Id.* at 1209-10. The dean informed the court that Brooks's jury service would not be a problem, and, after Brooks was informed of this, he expressed no further concern about serving. *Id.* at 1210. The prosecution did

not question him further about the issue. *Id.* But in addition to this, the record reflected that the prosecutor anticipated a short trial during voir dire, which undermined the prosecutor's stated concern, and the prosecutor declined to exercise peremptory challenges against several white venire members with similar conflicting obligations. Id. at 1210-12. Under this record, the Court concluded that a *Batson* violation was shown. *Id.* at 1212.

Speculation is a two-way street. The prosecutor in this case necessarily engaged in some speculation in exercising her peremptory challenges, but she offered facially valid, race-neutral reasons for exercising those challenges. A defendant cannot establish the requisite discriminatory intent by speculating about possibly discriminatory motivation on the prosecutor's part. Rather, the defendant must present a record which gives the trial court a factual basis on which to conclude the prosecutor acted with a discriminatory intent. *See Vargas*, 838 S.W.2d at 556; *Akeen*, 2006 Tex. App. LEXIS 127, at *23.

Grant does not challenge on appeal the prosecutor's decision to exercise a peremptory challenge against Hartfield. From the record, I cannot say that the trial court's ruling with regard to Franklin or Veail is clearly erroneous. Thus, I would overrule Grant's first point.

**Punishment Witnesses**

Grant contends in his second point that the court abused its discretion by permitting the State to ask his punishment witnesses on cross-examination whether a person who has shot another five times should receive community supervision.[4]

After Grant himself testified in support of his application for community supervision, the State asked him without objection[5] how many times a person should be able to shoot someone before he goes to the penitentiary (*i.e.*, should no longer be considered eligible for community supervision). Grant replied, "I think none."

Next, Grant's former employer testified that Grant is "a good kid" and was a good employee. On cross-examination, he testified that, if it were up to him, he would hire Grant if Grant received community supervision. The court then sustained Grant's objection to the State's question of whether the witness's opinion would change if Grant had shot a loved one. Then, the court sustained Grant's objection to the State's question of what kind of punishment a defendant should receive if he has shot someone at least five times. The court also instructed the jury to disregard this question, but denied Grant's motion for mistrial.

After this the State cross-examined an acquaintance of Grant's who opined that incarcerating Grant "would be a loss of tax dollars." The State first asked this witness if his opinion would change if Grant had shot the witness's step-daughter five times. The

---

[4]     According to the testimony, Grant shot the complainant five times.

[5]     The court had just sustained Grant's objection to a similar question in which the State asked Grant how many times he himself should be able to shoot someone "before this jury does the right thing and sends you to the penitentiary." Grant's objection was that the question impermissibly invaded the province of the jury.

court overruled Grant's objection that this question planted prejudice, bias and sympathy in the minds of the witness and the jury, and the witness responded that his opinion would not change. Over a similar "prejudice" objection, the court permitted the State to ask the witness whether his opinion would change if Grant had abused the witness's step-daughter. This time, the witness said his opinion would be different.

The next day, the State cross-examined Grant's father without objection regarding whether a defendant who has shot his victim five times should go to prison. Making it clear that he understood how his answer may impact Grant's punishment,[6] the father testified that such a defendant should not go to prison.

The State cross-examined both Grant and his father without objection on the issue about which Grant complains on appeal. Grant's objection to the State's cross-examination of his acquaintance stated a different ground than that presented on appeal. And the court sustained Grant's objection to the State's cross-examination of his former employer. This witness never answered the complained-of question, and Grant does not complain about the court's denial of his motion for mistrial. Accordingly, I would hold that this issue has not been preserved for appellate review. *See* TEX. R. APP. P. 33.1(a)(1); *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008).

### Conclusion

In my opinion, both of Grant's appellate points are without merit. Thus, I would affirm the judgment. Because the majority chooses otherwise, I respectfully dissent.

---

[6] After answering the question "no," the father added, "I'm not going to tell you to send my son to jail."

FELIPE REYNA
Justice

Dissenting opinion delivered and filed May 20, 2009
Do not publish